BALDWIN GRAPHIC SYSTEMS,
INC., Plaintiff–Appellant,

v.

SIEBERT, INC., Defendant–Appellee.

No. 2007–1262.

United States Court of Appeals,
Federal Circuit.

Jan. 15, 2008.

Thomas B. Kenworthy, Morgan, Lewis & Bockius LLP, of Philadelphia, PA, argued for plaintiff-appellant. With him on the brief was Kenneth J. Davis.

Keith D. Parr, Lord, Bissell & Brook LLP, of Chicago, IL, argued for defendant-appellee. With him on the brief were Hugh S. Balsam and James T. Peterka. Of counsel on the brief was Robert P. Conlon, Walker Wilcox Matousek LLP, of Chicago, IL.

Before MICHEL, Chief Judge, RADER, and MOORE, Circuit Judges.

RADER, Circuit Judge.

Baldwin Graphic Systems, Inc. (Baldwin) sued Siebert, Inc. (Siebert) for infringement of U.S. Patent No. Re. 35,976 (the Reissue patent) and U.S. Patent No. 5,974,976 (the '976 patent). After conducting a *Markman* hearing, the United States District Court for the Northern District of

Illinois ultimately granted Siebert's motions for summary judgment of non-infringement of both patents. Because the district court erred in its construction of some of the disputed claim terms, this court affirms-in-part, reverses-in-part, and remands.

## I

Baldwin's patents claim systems for cleaning a cylinder of a printing press using strips of cleaning fabric and methods for making those systems. Baldwin sued Siebert, asserting that Siebert's packaged fabric rolls infringed claim 32 of the Reissue patent and claims 1, 7, 9, 12, 14, 23, and 25 of the '976 patent.*

The district court construed two phrases in claim 32 of the Reissue patent, "a pre-soaked fabric roll" and "sealed sleeve." Claim 32 of the Reissue patent states:

32. A pre-packaged, pre-soaked cleaning system for use to clean the cylinder of printing machines comprising in combination:

(1) *a pre-soaked fabric roll* saturated to equilibrium with cleaning solvent disposed around a core, said fabric roll having a *sealed sleeve* which can be opened or removed from said fabric roll for use of said fabric roll, disposed therearound, and said system including

(2) means for locating said fabric roll adjacent to and operatively associated with a cylinder to be cleaned.

Reissue patent, col.11 1.9–col.12 1.8 (emphases added).

The district court construed "a pre-soaked fabric roll" to mean "a single presoaked fabric roll." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 1:03–CV–07713, 2005 WL 1838451, **5–6 (N.D.Ill. July 28, 2005) (*Initial Order*). In concluding that "a"

means "one" in this context, the district court largely relied on the subsequent use of "said fabric roll" as suggesting a singular fabric roll. *Initial Order*, at *4. Also, according to the district court, the statement in the Reissue patent's specification that the sleeve is "disposed around and in intimate contact with the fabric roll," Reissue Patent, col.2 ll.22–23, col.3 ll.17–18, evinced an intent to limit "a pre-soaked fabric roll" to "one pre-soaked fabric roll" because this condition "would not be fully possible with more than one roll in the sleeve." *Initial Order*, at *5.

As for "sealed sleeve," the district court construed this term to mean "heat-sealed sleeve." *Initial Order*, at **7–8. Not readily apparent from the language of claim 32 itself, the district court arrived at this conclusion through an examination of the specification and the prosecution history of the Reissue patent. The Reissue patent originally issued as U.S. Patent No. 5,368,157 (the '157 patent), and as the district court noted, "[a]ll references in the reissue patent specification to a sealed sleeve are to a 'heat-sealed' or a 'heat shrunken and heat-sealed' sleeve, as are all references in the 28 claims that appeared in the original '157 patent." *Initial Order*, at **5–6. During prosecution of the Reissue patent, the applicants attempted to remove "heat" as a modifier of "sealed" and "sealable" from the specification, but the PTO examiner rejected the proposed changes as impermissibly introducing new matter:

It is inconceivable that the applicants can find such a teaching in ... the original specification, which by its own terms refers to the sleeve as a heat sealable plastic sleeve. Why would one of ordi-

---

* Baldwin initially asserted that Siebert infringed another of its patents, U.S. Patent No. 6,035,483, but chose not to pursue this claim. With respect to the '976 patent, Baldwin as-

serted that Siebert directly infringed claims 1, 7, 9, 14, and 25, induced the infringement of claim 23, and contributorily infringed claim 12.

nary skill in the art upon being informed that a sleeve was a heat sealable plastic sleeve, infer that what was really intended was that the sleeve need not be plastic and/or need not be heat sealable? *Initial Order*, at \*\*6–7 (quoting Reissue Patent Prosecution, PTO Official Action May 15, 1996 at 5) (ellipsis added).

Due to these objections, the applicants withdrew their broadening amendments to the specification. Because of the withdrawal, the applicants maintained that the examiner's new matter rejection was moot. Thus, the district court limited the term "sealed sleeve" in Reissue claim 32 to a "heat-sealed sleeve" because "[a] broader reading would be wholly incongruous with the patent prosecution, the patent examiner's blunt rejection of the contention that the patent specification supports the broader term, and the patentees' own acknowledgment that their revised amendments no longer sought to broaden this terminology." *Initial Order*, at \*\*6–7.

Based on its construction of "a presoaked fabric roll" and "sealed sleeve," the district court granted Siebert's motion for summary judgment of non-infringement of claim 32 of the Reissue patent. The district court based its summary judgment on the undisputed facts that Siebert sold its accused fabric rolls in sets of three or between six and nine, but not individually. *Initial Order*, at \*\*5–6. Likewise, Siebert did not sell its fabric rolls in heat-sealed sleeves. *Id.*

With respect to the asserted claims of the '976 patent, claims 1 and 14 are independent claims, and the other asserted claims depend from either claim 1 or claim 14. Claims 1 and 14 contain the disputed limitations, "reduced air content cleaning fabric" (claim 1) and "reducing air content of a strip of cleaning fabric" (claim 14). The district court construed the phrase "reduced air content cleaning fabric" to address these similar claim terms togeth-

er. *Initial Order*, at \*8. Claims 1 and 14 of the '976 patent recite:

1. A device for cleaning a cylinder of a printing press comprising:

a *reduced air content cleaning fabric* having an air content by volume of 1 to 50 percent; and

a solvent comprising a low volatility cleaning compound which does not readily evaporate at ambient temperature, and means for introducing said solvent being into said reduced air content cleaning fabric in an amount sufficient for cleaning said cylinder of a printing press.

14. A method for making a cleaning system comprising:

reducing air content of a strip of cleaning fabric by 1 to 50 percent to form a strip of reduced air cleaning fabric; and contacting said strip of reduced air content cleaning fabric with a low volatility, organic compound solvent which does not evaporate readily at ambient temperature and pressure and pre-soaking and saturating said reduced air content cleaning fabric with said solvent.

'976 patent, col. 11 ll.58–67, col. 12 ll.49–57.

In its initial consideration of these terms, the district court concluded that "reduced air content cleaning fabric" was not limited to a particular method for producing reduced air content cleaning fabric. The district court reached this conclusion because the '976 specification notes that "[t]he preferred, but not exclusive, method of reducing the air content in the fabric is calendaring." *Initial Order*, at \*9 (quoting '976 patent, col.7 ll.27–28). Under the district court's initial construction, the claims covered reducing air content in the fabric by methods other than calendaring, including winding or rewinding the fabric on a roll. Because this claim construction created issues of fact about Siebert's method of winding its accused products on a

roll to reduce air content, the trial court denied Siebert's motion for summary judgment of non-infringement of the '976 patent. *Initial Order,* at \*\*9–10.

Some months later, on Siebert's motion, the district court reconsidered its construction of "reduced air content cleaning fabric." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.,* 1:03–CV–07713 (N.D.Ill. Mar. 21, 2006) (*Reconsideration Order*). Siebert then argued for the first time, and the district court agreed, that while the claims may not be limited to calendaring as the method for reducing air content, the claims were in fact limited to a particular timing of that air content reduction step relative to winding. With this understanding, the district court interpreted "reduced air content cleaning fabric" to mean "a fabric whose air content has been reduced by some method prior to being wound on a roll." *Reconsideration Order,* slip op. at 15.

The district court arrived at this new construction with an eye to the terms "fabric," "cleaning fabric," "strip of cleaning fabric," and "strip of cloth" in the various claims of the '976 patent. With respect to claim 14, the district court explained that the term "strip of cleaning fabric" "refers to a cleaning fabric whose air content has not yet been reduced ... because that term, a noun, is being modified by the verb 'reducing.' Thereafter in the claim the term used is 'reduced air content cleaning fabric,' because the reducing of the air content has already occurred." *Reconsideration Order,* slip op. 7. According to the district court, "independent ... claims 1 and 14, standing alone, do not aid much in our claim construction analysis ... [because] both claims are very broad and vague, neither teaching the winding of the fabric on a core." *Reconsideration Order,* slip op. at 5. Thus, the district court turned to the usage of various fabric and cloth-related terms in the dependent claims as a guide for construing "reduced air content cleaning fabric" in the independent claims. Also, the district court relied on the prosecution history, where Baldwin represented that the claimed invention improved fabric moisture content and solvent distribution "[b]y reducing the air content of the cleaning fabric *prior* to saturation." *Reconsideration Order,* slip op. at 8 (emphasis added). Because Siebert's product does not reduce air content before winding of the fabric on the roll, the district court granted Siebert's motion for summary judgment of non-infringement on the claims of the '976 patent. *Reconsideration Order,* slip op. at 15–16.

## II

■ This court reviews claim construction without deference to the district court's interpretation. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456 (Fed.Cir.1998) (en banc). Likewise, a district court's grant of a motion for summary judgment receives review without deference. *Johns Hopkins Univ. v. CellPro, Inc.,* 152 F.3d 1342, 1353 (Fed.Cir.1998).

■ First, as to the Reissue patent, "[t]his court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *KCJ Corp. v. Kinetic Concepts, Inc.,* 223 F.3d 1351, 1356 (Fed.Cir.2000). That "a" or "an" can mean "one or more" is best described as a rule, rather than merely as a presumption or even a convention. The exceptions to this rule are extremely limited: a patentee must "evince[ ] a clear intent" to limit "a" or "an" to "one." *Id.* The subsequent use of definite articles "the" or "said" in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning. An exception to the

general rule that "a" or "an" means more than one only arises where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule. *See, e.g., Abtox Inc. v. Exitron Corp.*, 122 F.3d 1019 (Fed. Cir.1997); *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098 (Fed.Cir. 1996).

■ This record does not contain a clear indication that the applicant departed from the general rule for the article "a." Nothing in the claim language, specification, or prosecution history compels an exceptional reading of "a" in this case. The district court erred by misapplying the term "said fabric roll" later in the claim and the phrase "in intimate contact with the fabric roll" in the specification. *Initial Order*, at *5. As noted above, the use of a definite article ("said" or "the") to refer back to an initial indefinite article does not implicate, let alone mandate the singular. Because the initial indefinite article ("a") carries either a singular or plural meaning, any later reference to that same claim element merely reflects the same potential plurality. In grammatical terms, the instances of "said fabric roll" in the claim are anaphoric phrases, referring to the initial antecedent phrase. Because the initial phrase carries no definitive numerosity, the anaphoric phrases do not alter that meaning in the slightest.

Contrary to the district court's analysis, § 2173.05(e) of the Manual of Patent Examining Procedure (MPEP) does not suggest otherwise. Section 2173.05(e) describes the need, in most cases, for claim terms to have proper antecedent bases:

The lack of clarity could arise where a claim refers to "said lever" or "the lever," where the claim contains no earlier recitation or limitation of a lever and where it would be unclear as to what element the limitation was making reference. Similarly, if two different levers are recited earlier in the claim, the recitation of "said lever" in the same or subsequent claim would be unclear where it is uncertain which of the two levers was intended.

MPEP § 2173.05(e). According to the district court, § 2173.05(e) "only strengthens" the exclusively singular nature of "a pre-soaked fabric roll," because "the use of 'said fabric roll' implies that the prior reference to 'a fabric roll' should be read as a single roll, not one or more rolls, in order to avoid confusion." *Initial Order*, at *4. To the contrary, MPEP § 2173.05(e) is inapposite because the limitations in claim 32 all relate to proper antecedent bases. Thus, the confusion or indefiniteness problem addressed by § 2173.05(e) does not arise in this claim.

The district court's reliance on language in the specification to limit "a pre-soaked fabric roll" to a single roll is similarly unavailing. The phrase "disposed around and in intimate contact with the fabric roll" appears twice in the specification of the Reissue patent, and describes the relationship between the plastic sleeve and the fabric roll. Reissue patent, col.2 ll.22–23, col.3 ll.17–18. This description does not require a single pre-soaked fabric roll. Under the terms of this description, the plastic sleeve could be in intimate contact with multiple fabric rolls, like the plastic wrapping on a package of several hot dogs is in intimate contact with each of the hot dogs, despite the fact that the hot dogs themselves contact each other as well as the packaging. Appellant's Br. at 13. This description contains no requirement, implicit or explicit, that the plastic sleeve must be in intimate contact with the entire fabric roll. For these reasons, "a pre-soaked fabric roll" as used in claim 32 of the Reissue patent is not limited to a single roll.

■ This court agrees, however, with the district court's careful and accurate analysis in its construction of "sealed sleeve" as limited to "heat-sealed sleeve" in the Reissue patent. This court has consistently recognized that the Patent Act prevents an applicant from adding new subject matter during the patent prosecution process. *See Pandrol USA, LP v. Airboss Ry. Prods., Inc.,* 424 F.3d 1161, 1165 (Fed.Cir.2005) (citing *In re Ruschig,* 54 C.C.P.A. 1551, 379 F.2d 990 (CCPA 1967)). In this case, during prosecution of the Reissue application, the examiner rightly refused to allow the applicants to amend the specification to remove references to "heat" as the way of sealing the sleeve. This change would have broadened the patent and introduced impermissible new matter not included in the initial disclosure. Thus the claims would have been invalid for lack of support in the initial disclosure for the new subject matter encompassed by the change because the claims could not show any support if construed to encompass more than heat-sealed sleeves.

In sum, with respect to the Reissue patent, this court finds that the district court erred in its construction of "a pre-soaked fabric roll." Nonetheless, the trial court correctly construed "sealed sleeve," rendering Siebert's fabric rolls non-infringing. Thus this court affirms the district court's summary judgment of non-infringement with respect to the Reissue patent.

■ Turning to the asserted claims of the '976 patent, this court finds that the district court erred in limiting "reduced air content cleaning fabric" to "a fabric whose air content has been reduced by some method prior to being wound on a roll." Upon review of the claims, specification, and prosecution history, this court discerns no way to uphold the trial court's construc-

tion of "reduced air content cleaning fabric."

■ As a preliminary matter, the parties agreed that the terms "reduced air content cleaning fabric" in claim 1 and "reducing air content of a strip of cleaning fabric" in claim 14 were substantially similar. Seizing on this point, the district court agreed, and construed only "reduced air content cleaning fabric" in an attempt to construe similar terms in both independent claims at once. Unfortunately this approach blurred an important difference between the two independent claims, namely that claim 1 is an apparatus claim and claim 14 is a method claim. Despite their similarities, these claims are directed toward different classes of patentable subject material under 35 U.S.C. § 101. Courts must generally take care to avoid reading process limitations into an apparatus claim, *see AFG Industries, Inc. v. Cardinal IG Co.,* 375 F.3d 1367, 1372–1373 (Fed.Cir.2004), because the process by which a product is made is irrelevant to the question of whether that product infringes a pure apparatus claim, *see Vanguard Products Corp. v. Parker Hannifin Corp.,* 234 F.3d 1370, 1372 (Fed.Cir.2001) ("A novel product that meets the criteria of patentability is not limited to the process by which is was made.").

Claim 1 and its dependent claims (asserted claims 7, 9, and 12) are pure apparatus claims. They have no process limitations. Claims 1, 7, 9, and 12 are therefore not limited to any particular process or method of making the claimed prepackaged, pre-soaked cleaning system, or to any particular sequence of air content reduction relative to winding.

■ Unlike claim 1 and its dependent claims, claim 14 and its dependent claims (asserted claims 23 and 25) are method claims and each recites a series of steps. Therefore, and again unlike claim

1, the scope of claim 14 specifies the limits on the performance of those steps. As with any other type of claim, courts must carefully avoid importing limitations from the specification into method claims. *See CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1231 (Fed.Cir.2005) ("In examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims."). Nonetheless the specification informs the meaning of the claims. In *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed.Cir.2005) (en banc), this court acknowledged the difficult distinction between "using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim." This court explained, however, that the distinction is manageable "if the . . . focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Id.* Also, although a method claim necessarily recites the steps of the method in a particular order, as a general rule the claim is not limited to performance of the steps in the order recited, unless the claim explicitly or implicitly requires a specific order. *See Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342–43 (Fed. Cir.2001). The specification or prosecution history may also require a narrower, order-specific construction of a method claim in some cases. *Id.*

In this case, the claims themselves contain no basis to require air content reduction before winding. Though the claims, specification, and prosecution history require that the air content of the cleaning fabric be reduced prior to saturation, this does not mean that the air content must be reduced prior to winding on the roll. Also, in relying on the dependent claims to inform the meaning of "reduced air content cleaning fabric" in claims 1 and 14, the district court effectively imported limitations it saw in dependent claims into the independent claims, contrary to basic claim construction principles. The effect of this process was to bootstrap a temporal restraint on the occurrence of a winding step relative to air content reduction, even though winding is not even explicitly recited in either claim 1 or claim 14. As independent claims, claims 1 and 14 are naturally broader than their dependent counterparts, making the district court's use of the dependent claims to constrict claims 1 and 14 all the more suspect. For example, claim 18 recites:

> 18. The method as defined in claim 14 including providing an elongated core wherein said strip of cleaning fabric is wrapped about said elongated core prior to contacting said strip of cleaning fabric with said solvent. ·

'976 patent, col. 13 ll.3–6. The district court held that the second instance "said strip of cleaning fabric" had to refer to reduced air cleaning fabric because air content must be reduced prior to contacting with solvent, and that the term should be interpreted consistently within the same claim. When read consistently, the strip of cleaning fabric that is "wrapped about an elongated core" already has its air content reduced. But even if the district court correctly determined that the method of claim 18 requires air content reduction prior to winding, this is an additional limitation of that particular dependent claim, and not a requirement of independent claim 14. In short, the dependent claims simply do not support the district court's determination that the fabric in all instances must have its air content reduced prior to being wound on a roll.

Furthermore, the '976 patent's specification, in simple terms, does not warrant such a narrow reading. With an eye to the understanding of an ordinarily skilled artisan, this court cannot find support for widely varying interpretations of the term

"fabric" and related terms throughout the claims. An ordinarily skilled artisan would simply not construe similar terminology so differently from one usage to another. The passages from the specification cited by the district court in support of its temporally restricted construction are not dispositive. For example, the district court quoted from the summary of the invention, which states that "[a] cleaning fabric with a reduced air content is wrapped around the core to form a fabric roll." *Reconsideration Order,* slip op. at 12 (quoting '976 patent, col.3 ll.65–66). For the district court, this use of "with" suggested that air content reduction must occur prior to winding. But this language, like the other passages cited by the district court, does not unequivocally preclude a different order of steps, and this court sees no justification in the specification for imposing a temporal constraint on claim 14 that is not required by or implicit in the language of the claim itself.

██ Finally, the district court's reliance on the prosecution history, namely the singular comment by the applicants during prosecution that the air content reduction occurs prior to saturation, provides no support whatsoever for the district court's construction requiring air content reduction before winding. By no means does this statement constitute something akin to a disavowal of claim scope. *See Purdue Pharma L.P. v. Endo Pharms., Inc.,* 438 F.3d 1123, 1136 (Fed. Cir.2006) (disavowal of claim scope must be "clear and unmistakable"). Moreover, even if this statement constituted a disavowal of scope with respect to the method claims, it would not justify the district court's construction, because the statement would, at best, require reduction before saturation, not necessarily before winding. After all, winding could occur before saturation. For these reasons, the district court's final construction of "reduced air content cleaning fabric" was erroneous.

But the district court's initial construction of this term as not limited to a particular method (calendaring) for producing reduced air content cleaning fabric was correct. As the district court astutely observed, the specification merely prefers, not requires, calendaring. This court therefore remands for further proceedings consistent with this opinion.

## III

In this case, the claim construction issues entirely drive the summary judgment analysis. With respect to claim 32 of the Reissue patent, even though the district court erred in limiting "a pre-soaked fabric roll" to a single roll, there is no dispute that Siebert's accused products are not heat-sealed, so this court affirms the district court's summary judgment of non-infringement as to this patent. But the district court's error in construing "reduced air content cleaning fabric" requires this court to reverse and remand for further proceedings because under the district court's initial construction of this claim term, with which this court agrees, the district court declined to grant Siebert's motion for summary judgment of non-infringement of the '976 patent.

*AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED*

## COSTS

Each party shall bear its own costs.