NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**AEROTEL, LTD., AEROTEL U.S.A., INC.,**
AND **AEROTEL U.S.A., LLC,**
*Plaintiffs-Appellants,*

v.

**T-MOBILE USA, INC.,**
*Defendant-Appellee.*

---

2010-1179

---

Appeal from the United States District Court for the Western District of Washington in case no. 07-CV-1957, Judge James L. Robart.

---

Decided: December 20, 2010

---

DENNIS M. FLAHERTY, Ostrager Chrong Flaherty & Broitman, P.C., of New York New York, argued for plaintiffs-appellants. With him on the brief was GLENN F. OSTRAGER. Of counsel was JEANNE C. CURTIS, Ropes & Gray LLP, of New York, New York

SHANNON M. JOST, Stokes Lawrence, P.S., of Seattle, Washington, argued for defendant-appellee. With her on the brief was SCOTT A.W. JOHNSON.

---

Before BRYSON, SCHALL, and PROST, *Circuit Judges*.

PER CURIAM.

Aerotel, Ltd., and its corporate affiliates ("Aerotel") appeal a consent judgment of noninfringement entered following a district court's claim construction order. We affirm.

I

Aerotel is the assignee of U.S. Patent No. 4,706,275 ("the '275 patent"). In 2007, Aerotel filed suit against appellee T-Mobile USA, Inc., alleging infringement of claim 23 of the '275 patent. Claim 23 recites a method of making prepaid telephone calls. It comprises the following steps:

> (a) issuing a valid special code to a calling party when a prepayment amount is deposited to the credit of said calling party;
> (b) storing the prepayment amount in a memory in a special exchange;
> (c) dialing said special exchange when the calling party wishes to make a telephone call to a called party;
> (d) inputting a special code and the number of the called party;
> (e) connecting the calling party to the called party only if the special code inputted by the calling party is a valid

special code, and in addition, only if the current initial prepayment amount in the memory exceeds the minimum cost of a call to the inputted number;

(f) monitoring the running cost of the call in accordance with its duration;

(g) disconnecting the calling party from the called party when the calling party hangs up, or when the running cost of the call exceeds the current initial prepayment amount, whichever occurs first; and

(h) deducting from the initial prepayment amount the running cost of the call.

Following a hearing, the district court construed ten claim terms or phrases, six of which are appealed: (1) "dialing said special exchange"; (2) "inputting a special code and the number of the called party"; (3) "connecting the calling party to the called party only if the special code inputted by the calling party is a valid special code"; (4) "monitoring the running cost of the call"; (5) "current initial prepayment amount"; and (6) "deducting from the initial prepayment amount the running cost of the call." As part of its claim construction, the court interpreted step (d), "inputting a special code and the number of the called party," as necessarily following step (c), "dialing said special exchange when the calling party wishes to make a telephone call to a called party." The court also interpreted the claim language as requiring that the "calling party" enter the special code.

After the court issued its claim construction order, the parties stipulated to summary judgment of noninfringement, and judgment was entered. The parties agree that

in light of the stipulation, each of the district court's claim constructions, with the exception of "current initial pre-payment amount," must be overturned in order to reverse the grant of summary judgment.

## II

We begin and end with step (d) of claim 23: "inputting a special code and the number of the called party." The district court's construction requires that the entirety of step (d) be performed by the calling party. The district court also concluded that claim 23 must be read sequentially so that the special code must be input after the special exchange is dialed. Thus, the court construed the claim to require that step (d) be performed each time a connection is initiated between the calling party and the special exchange.

Aerotel challenges two aspects of the district court's construction of step (d). First, Aerotel disagrees with the district court that the step of inputting the special code can take place only after the special exchange is dialed. Second, Aerotel argues that "inputting a special code" need not be done by a person, but can be done automatically, without human intervention.

1. On the first issue, Aerotel contends that the first action recited in step (d), inputting a special code, may precede the action recited in step (c), dialing the special exchange. In *Interactive Gift Express, Inc. v. Compu-Serve, Inc.*, 256 F.3d 1323, 1343 (Fed. Cir. 2001), we held that a method claim is properly construed to require that the steps be performed in sequential order when the claims or the specification "directly or implicitly require[]" such ordering. *See also Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008) (noting

that prosecution history may similarly require that the steps be performed in the recited order). In this case, Aerotel agrees with the trial court that the second half of step (d), "inputting . . . the number of the called party," must follow step (c). There is no way the number of the called party could be known by, much less transmitted to, the special exchange before the calling party is connected with the special exchange. However, Aerotel argues that the two actions recited in step (d) constitute two separate steps and that the first of those—"inputting a special code"—need not occur after step (c).

Aerotel's argument that step (d) can be divided into two steps is unsupported by the claim language, the specification, or the prosecution history of the '275 patent. As T-Mobile points out, "inputting such special code for verification" and "inputting the number of the called party" are separated as distinct steps in claim 1 of the '275 patent. '275 patent, col. 6, ll. 55-56. The contrast between the two claims strongly suggests that the two portions of step (d) of claim 23 were intended to be performed together. Moreover, the specification repeatedly refers to the two actions recited in step (d) as occurring after the connection is established with the special exchange and before the calling party is connected with the called party. *E.g.*, '275 patent, col. 3, ll. 26-30; *id.* col. 4, ll. 19-22. Figure 1 of the patent depicts "Dial code & called number" as a single block on a flow chart representing the operation of the system. Figure 2 separates the inputting of the special code and the number of the called party, but each of those steps occurs after the special exchange is reached and before the calling party is connected to the called party. Likewise, during prosecution Aerotel confirmed that in the method taught by the patent, the calling party inputs his or her special code

"[a]fter the calling party is connected with the special exchange."

To support its argument, Aerotel directs the court to the account replenishment process discussed in the specification. The specification provides that once the calling party is connected to the special exchange, a "special code say 888 can be used to input more credit with another code number." '275 patent, col. 6, ll. 24-26. Pointing to the storage process in step (b), Aerotel reasons that the credit influx must be stored in the memory of the special exchange. Leaving aside the question whether the added funds would be considered a "prepayment amount" under step (b), Aerotel's suggestion that the replenishment "special code" can substitute for the "valid special code" referenced in steps (a) and (e) is clearly incorrect. A calling party plainly cannot connect to the special exchange simply by dialing a generic special code used for adding credit, such as 888. Moreover, during prosecution the applicant stated that the "customer pays a predetermined amount and receives a ticket having an associated authorization code or PIN number (referred to as a 'special code')." Although Aerotel argues that the reference to the PIN number was limited to particular embodiments of claim 23, the context makes it clear that the quoted language referred to the invention as a whole and was not restricted to a particular embodiment.

Aerotel suggests that the reference to "more credit" in the description of the replenishment process harkens back to steps (a) and (b). The replenishment process, however, does not "restart" the sequence of steps recited in claim 23, as Aerotel argues. Before replenishing, the calling party must already be connected to the special exchange; thus, step (c) must already have been completed at that point. Until the connection with the special exchange is

lost, the special code does not need to be re-input to enable the calling party to conduct transactions with the special exchange.

Finally, Aerotel points to language in the specification contemplating that the method can be used to make multiple calls once the calling party has established a connection with the special exchange. '275 patent, col. 6, ll. 22-24. In that setting, the calling party can input the number of the called party without inputting the special code before each subsequent call. However, all of the previous steps of claim 23 would have already taken place, so it is not relevant that a new number of a called party would be input without the special code.

In sum, the most logical reading of claim 23 orders steps (c) and (d) sequentially. While not explicit in the claim language, that reading is compelled by the natural sequence of steps in a telephone call and the lack of support in the specification or prosecution history for splitting step (d) into two parts.

2. On the second issue, Aerotel's argument that "inputting a special code" can be done automatically, and need not be done by a person each time step (d) is executed, is premised on the fact that step (d) is silent about who or what inputs the special code. Aerotel conceded in its reply brief that the calling party must input the special code at some point in the process recited in claim 23. That conclusion follows directly from the reference in step (e) to "the special code inputted by the calling party." Aerotel contends, however, that claim 23 reads on an embodiment in which the public telephone system inputs the special code to reach the special exchange. Aerotel posits that because the calling party can never reach the special exchange without going through the public tele-

phone system, nothing in claim 23 requires that *only* the calling party can input the special code. Aerotel's position is not at odds with the district court's construction, however, because the district court did not construe the claim language to require that inputting the special code be performed *only* by the calling party. Regardless of whether the special code is considered to be "inputted" once (by the calling party) or twice (by the calling party and the public telephone system), under each of the embodiments of the invention the calling party still must input the special code after the special exchange is dialed.

Aerotel also points to language in the specification indicating that "a register in the exchange can . . . input the dialed information to cause the exchange to complete the call between the calling party and the called party." '275 patent, col. 3, line 67, to col. 4, line 2. The specification discloses an embodiment in which the register "stores the called number received from the calling party and directs the redialer . . . to dial the number after verification." *Id.* col. 5, ll. 46-48. That embodiment of the '275 patent does not refer to storage of the special code in the register or its receipt by the redialer. But even if it had, that description of the embodiment does not affect the requirement of claim 23 that the calling party enter the special code. The register, like the public telephone system, might be deemed an intermediary between the caller and the special exchange, but that characterization does not obviate the need for the calling party to input the special code after the special exchange is dialed.

We conclude that the district court correctly construed step (d) to require the calling party to input the special code each time the calling party connects to the special exchange. Because that construction is fatal to Aerotel's

infringement argument, we need not address the district court's construction of the remaining claim terms.

**AFFIRMED**