NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WUNDAFORMER, LLC,**
*Plaintiff-Appellant*

**v.**

**FLEX STUDIOS, INC., FLEX STUDIOS UNION SQUARE, LLC, FLEX STUDIOS NOHO, LLC,**
*Defendants-Appellees*

**J. SIMON, LLC, MMOD7, LLC, WGI GROUP, LLC,**
*Defendants*

---

2016-1301

---

Appeal from the United States District Court for the Southern District of New York in No. 1:15-cv-04802-JSR, Judge Jed S. Rakoff.

---

Decided: February 16, 2017

---

MARTIN BADER, Sheppard, Mullin, Richter & Hampton LLP, San Diego, CA, argued for plaintiff-appellant. Also represented by MICHAEL MURPHY, WILLIAM JOSEPH BLONIGAN.

SCOTT D. BARNETT, Troutman Sanders LLP, Chicago, IL, argued for defendants-appellees. Also represented by JOSHUA A. BERMAN, TIMOTHY P. HEATON, JAMES M. BOLLINGER, New York, NY.

---

Before MOORE, REYNA, and TARANTO, *Circuit Judges.*

REYNA, *Circuit Judge.*

WundaFormer, LLC sued defendant-appellees ("Flex Studios") in district court for infringement of its patented apparatus for a Pilates reformer. Following claim construction, the parties jointly stipulated to non-infringement. WundaFormer appeals the district court's construction of the terms "stowed" and "transverse end comprising . . . a transverse member." Because the district court incorrectly construed both terms, we *reverse* and *remand* for further proceedings consistent with this opinion.

BACKGROUND

A. Patented Technology

Pilates is a form of exercise commonly performed on a specialized type of equipment called a reformer. At its most basic, a reformer is comprised of a carriage that slides along rails mounted to a stationary frame. Over the past century, the reformer has evolved to incorporate additional components, such as platforms, chairs, bars, handles, and benches. Initially, these components were separate from the reformer and needed to be installed or uninstalled depending on which exercise a user was performing. The patent at issue, U.S. Patent No. 8,602,953 ("'953 patent"), discloses a reformer with one or more built-in components, referred to as "ergonomic purchases," that need not be removed between exercises.

As described in the '953 patent, an ergonomic purchase is essentially a stable surface that can be used for

leverage while exercising. The written description explains that an ergonomic purchase can take "deployed" and "stowed" positions:

> The improvement generally comprises an ergonomic purchase that is integral to the reformer and that is translatable into both deployed and stowed positions. With the purchase translated to the stowed position the reformer is collapsed into a smaller overall volume for spatial efficiency for storage, transport, or during periods of nonuse. With the purchase translated into the deployed position a user mounted on the carriage may reach the purchase with a part of her body to stabilize herself during exercise.

'953 patent at col. 2 ll. 33–41.

The specification describes several different ergonomic purchases, including a bench, a ballet bar, handles, and a jump board. This case involves an embodiment with a bench that can be moved into deployed and stowed positions:

> In one embodiment, a conventional reformer design is enhanced with an integral ergonomic purchase translatable into deployed and stowed positions, wherein the ergonomic purchase comprises a rotatable bench rotatably confined to one end of the reformer. The rotatable bench includes a first planar surface, and a second planar surface forming a right angle with respect to the first planar surface. The reformer is configured so that when the bench is translated by rotation to the stowed position, the first planar surface lies substantially within a plane parallel to the carriage at a first elevation. The reformer is further configured so that when the bench is translated by rotation to the deployed position, the first planar surface lies substantially within a plane normal to

the carriage and the second planar surface lies substantially in a plane parallel to the carriage at a second elevation. Therefore the bench when stowed provides a seat at the carriage level. When deployed, the bench may provide a seat at a level other than carriage level and a push-off surface that faces the carriage.

'953 patent at col. 2 ll. 44−61.



*Id.* at FIGs 5, 10.

The patent's written description defines the terms "deployed" and "stowed." As emphasized below, the definition of deployed includes an intent-to-use limitation:

The term "deployed" as used herein means a state or position of a component of the reformer in which the component *is intended to be used by a user exercising* by means of the reformer. For example, an ergonomic purchase in a deployed condition has been translated, or moved and possibly

> fixed into a position on the reformer, that allows it to be reached for purchase by a user mounted exercising with the aid of the reformer. Contemporary dictionary definitions of the term deployed used in this mechanical sense may apply equally to the use of the term throughout this disclosure.

'953 patent at col. 5 ll. 46–55. The definition of stowed does not include an intent-to-use limitation. Instead, the written description provides that a component in the stowed position cannot be reached for the same purchase as when deployed:

> The term "stowed" as used herein means a state or position of a component of the reformer which collapses the overall volume of the reformer to a minimum, insofar as the volume may be affected by the component. In other words, it is the position of the component that will allow the reformer to be packaged within the smallest possible container, or the position of the component which renders the reformer most suitable for storage according to the manufacturer. A component translated to a stowed position, in practical terms, is no longer reachable for the same purchase achieved by a user in the position on the reformer from which she gained the purchase when the component was deployed. Contemporary dictionary definitions of the term stowed used in this mechanical sense may apply equally to the use of the term throughout this disclosure.

*Id.* at col. 5 l. 56–col. 6 l. 3.

### B. Proceedings Below

WundaFormer alleged that Flex Studios infringed independent claims 11 and 15 of the '953 patent. Claim 11 describes a reformer comprising a carriage that is attached by springs to a rectangular frame. Attached to the

frame is an ergonomic purchase that can be moved into stowed and deployed positions. The full claim language follows, with emphasis added to designate contested terms:

> 11. A reformer comprising:
>
>> a rectangular frame having two transverse ends connected by longitudinal rails, each *transverse end comprising* a pair of bases and *a transverse member* connected therebetween;
>>
>> a planar carriage attached to the frame by springs, the carriage moveable horizontally against force of the springs by means of rollers along the longitudinal rails; and
>>
>> an ergonomic purchase confined to the frame and translatable into a *stowed* position for spatial efficiency, and into a deployed position that enables a user mounted on the carriage to reach a purchase;
>>
>> wherein a transverse end arrests the ergonomic purchase in the stowed or deployed position.

'953 patent at col. 14 ll. 3−18 (emphasis added).

Claim 15 also describes a reformer comprising a carriage that is attached to a rectangular frame. At least one ergonomic purchase is attached to rectangular frame, and the purchase can be moved into stowed and deployed positions. The full claim language follows, with emphasis added to designate contested terms:

> 15. A reformer comprising:
>
>> a rectangular frame and a planar carriage attached to the frame by springs, the

frame having *a transverse end comprising a base pair and connecting transverse member*, the carriage moveable horizontally against force of the springs by means of rollers along the longitudinal rails mounted to the frame;

one or more ergonomic purchases integral to the reformer; and

means for translating the ergonomic purchase into deployed and *stowed* positions so that the ergonomic purchase is arrested by the transverse end in the deployed or stowed position.

*Id.* at col. 14 ll. 32−44 (emphasis added).

As relevant here, the parties disputed the construction of the terms "stowed" and "transverse end comprising . . . a transverse member."

### 1. District Court construction of "stowed"

The district court construed stowed to mean: "an ergonomic purchase movable into a position in which (i) the ergonomic purchase is not intended for use by a user exercising by means of the reformer and (ii) the overall volume is collapsed to a minimum." The second limitation, limitation (ii), is not in dispute. To justify the first limitation, the district court reasoned that stowed and deployed are mutually exclusive alternatives. Therefore, stowed must be construed to contrast the intent-to-use requirement found in the definition of deployed.[1]

---

[1]    *See WundaFormer, LLC v. Flex Studios, Inc.*, No. 15-cv-4802 (JSR), 2015 WL 6437401, at *2−4 (S.D.N.Y. Oct. 15, 2015).

The district court declined to adopt Flex Studios' proposed construction of stowed, which would require that a stowed ergonomic purchase is "not available . . . for use by a user." In doing so, the district court relied on intrinsic evidence, noting that the written description defines stowed to require only that a purchase in the stowed position is no longer available for the same purchase as when deployed. The district court also noted that the written description describes the bench being used as a seat when stowed. J.A. 8−9. Then, the district court referenced extrinsic evidence showing that the bench is used for exercise in the stowed position:

> [W]hile the Court need not consider extrinsic evidence to reach its construction, nonetheless, to the extent that the term could be considered ambiguous, the Court notes that the inventor and a Pilates instructor have testified that the rotatable bench component is, in fact, used for exercise in practice when in the "stowed" position, which is inconsistent with defendants' proposed construction.

*Id.*

### 2. District Court construction of "transverse end comprising . . . a transverse member"

Claims 11 and 15 both include a "transverse end comprising . . . a transverse member" limitation.[2] The district

---

2    Specifically, claim 11 provides for "a rectangular frame having two transverse ends connected by longitudinal rails, each transverse end comprising a pair of bases and a transverse member connected therebetween." '953 patent at col. 14. ll. 4−7. Claim 15 provides for "a rectangular frame and a planar carriage attached to the frame by springs, the frame having a transverse end comprising

court construed these terms to require that each transverse end could have only one transverse member, which would take the form of a horizontal crossbar: "an end portion of the reformer frame comprised of a pair of bases to support the frame of the reformer connected by *a* horizontal crossbar."[3] WundaFormer argued that these terms should be construed so that the transverse ends are connected by *at least one* horizontal structure. The court disagreed, finding nothing in the specification that contemplates more than one connecting transverse member.

Based on the district court's claim construction, the parties jointly stipulated to non-infringement. Following the joint stipulation of non-infringement, the district court granted Flex Studios' motion to dismiss. Wundaformer appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

### STANDARD OF REVIEW

Where the district court's claim construction relies on only intrinsic evidence, the construction is a legal determination reviewed *de novo*. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 840−42, (2015). A district court's subsidiary fact findings about extrinsic evidence are reviewed for clear error. *Id.* Here, the district court's claim construction mentioned a subsidiary fact finding based on extrinsic evidence, but the district court's construction did not rely on that extrinsic evidence. Therefore, our review is *de novo*.

---

a base pair and connecting transverse member. *Id.* at col. 14 ll. 33−36.

[3] *See WundaFormer*, No. 15-cv-4802 (JSR), 2015 WL 6437401, at *4 (emphasis added).

DISCUSSION

WundaFormer argues that the district court erred in its construction of "stowed" and "transverse end comprising . . . a transverse member." We agree.

We hold that the district court erred when it construed the term "stowed" to require that "the ergonomic purchase is not intended for use by a user exercising by means of the reformer." First, the written description defines "stowed" to require only that an ergonomic purchase in its stowed position "collapses the overall volume of the reformer to a minimum, insofar as the volume may be affected by the component." '953 patent at col. 5 l. 54−col. 6 l. 3. Second, the written description provides that a stowed component is not available for the *same* purchase as when deployed. *Id.* That implies that a component in the stowed position may be available for a *different* purchase than when deployed. While the specification regularly refers to the "stowed" position as one ideal for storage and transportation, nothing suggests that a component in its stowed position cannot be used for exercise.

To the contrary, one preferred embodiment describes using the bench as a seat in its stowed and deployed positions, implying that a user could use that bench as a seat while exercising with the reformer. *Id.* at col. 2 ll. 44−61. As the district court noted, this is entirely consistent with the extrinsic evidence that the bench is used for exercise in its stowed position.

Even if the deployed and stowed positions are mutually exclusive, it does not follow that a component can only be intended for use during exercise in the deployed position. The mutual exclusivity of two positions does not require that those two positions be exact opposites in every respect. Instead, it requires only a single incompatible characteristic. Therefore, the district court erred when it construed stowed to mean that "the ergonomic

purchase is not intended for use by a user exercising by means of the reformer."[4]

The district court also incorrectly construed the "transverse end comprising . . . a transverse member" limitations as allowing only one transverse member. The term "comprising" indicates the claim is open-ended and does not exclude additional, unrecited elements. *See e.g.*, *Gillette Co. v. Energizer Holdings Inc.*, 405 F.3d 1367, 1371−73 (Fed. Cir. 2005). The indefinite article "a" is interpreted to carry the meaning of "one or more." *See Baldwin Graphic Sys. Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008). Accordingly, the claims themselves contemplate one or more transverse members. Further, the specification suggests that "additional transverse members" may be used to "strengthen the frame" or "arrest the translation of an ergonomic purchase." '953 patent col. 6 ll. 16−21. Absent disavowal of claim scope, WundaFormer is entitled to the full scope of its claimed invention. Therefore, the district court erred in adopting a construction that excludes transverse ends comprising more than one transverse member.

For these reasons, we *reverse* and *remand* the district court's decision for further proceedings consistent with this opinion.

## REVERSED AND REMANDED

### COSTS

Costs to plaintiff-appellant.

---

[4] Because the limitation was improperly included in the construction, we do not reach in this opinion the propriety of construing structural claims to include an "intent-to-use" limitation.