NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CREATIVE INTERNET ADVERTISING CORPORATION,**
*Plaintiff-Appellee,*

v.

**YAHOO!, INC.,**
*Defendant-Appellant.*

---

2010-1215

---

Appeal from the United States District Court for the Eastern District of Texas in case No. 07-CV-0354, Magistrate Judge John D. Love.

---

Decided: April 22, 2011

---

ANTHONY G. SIMON, The Simon Law Firm PC, of Saint. Louis, Missouri, argued for plaintiff-appellee. With him on the brief was TIMOTHY E. GROCHOCINSKI. Of counsel on the brief was MIKE SCHAENGOLD, Patton Boggs LLP, of Washington, DC.

CHARLES K. VERHOEVEN, Quinn Emanuel Urquhart & Sullivan, LLP, of San Francisco, California, argued for defendant-appellant. With him on the brief were KATHLEEN M. SULLIVAN and KEVIN A. SMITH.

---

Before NEWMAN, CLEVENGER, and BRYSON, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* BRYSON.
Opinion dissenting-in-part filed by *Circuit Judge* CLEVENGER.

BRYSON, *Circuit Judge.*

This patent infringement case involves instant messaging technology that is adapted to display background advertisements and that provides each user the ability to opt out of displaying advertisements. Yahoo!, Inc., appeals the final judgment of the United States District Court for the Eastern District of Texas denying Yahoo!'s motions for judgment as a matter of law ("JMOL") that U.S. Patent No. 6,205,432 ("the '432 patent") was invalid and not infringed by Yahoo! Messenger. We affirm the judgment with respect to validity but reverse with respect to infringement.

I

Creative Internet Advertising Corporation asserted claim 45 of the '432 patent against Yahoo!. The '432 patent primarily describes a system in which references to advertisements are inserted at a server between end users of the instant messaging software.[1] However,

---

[1] For example, the invention abstract refers to a message server in six out of eight sentences. The abstract

Yahoo!'s instant messaging product, Yahoo! Messenger, inserts references to advertisements on end users' computers instead of on a server. The central dispute in this appeal is whether claim 45 reads on Yahoo!'s server-less system.  Claim 45 recites the following (emphasis added):

> 45. A computer program embodied on a computer-readable medium for inserting a background reference to a stored advertisement into an end user communication message, said computer program comprising:
>
> logic configured to *receive* an end user communication message from a first site;
>
> logic configured to *insert* a background reference to a stored advertisement into said end user communication message, wherein said logic configured to insert the background reference is further configured to insert said background reference responsive to an overwrite authorization; and
>
> logic configured to *transmit* said end user communication message with the background reference to a second site.

Yahoo! sought a construction requiring the three elements of claim 45 to occur in the same sequence as written, i.e., first receive, then insert, then transmit.  Creative contended that the claim did not require sequential action because it was an apparatus claim.  Under Creative's construction, claim 45 would read on a program that

---

notes that the description is limited to "some embodiments," and later on the patent describes a different, server-less embodiment using "integrated end user message software." '432 patent, col. 7, line 65, to col. 8, line 4.

inserted a background reference into a message, transmitted the message, and then received the message at another site. After a *Markman* hearing, the district court rejected Yahoo!'s proposed construction and construed claim 45 as a purely structural claim without any spatial or sequential limitations. The district court also construed "end user communication message" as "[a] set of data transmitted over a communication network," and "overwrite authorization" as "[a]pproval to replace an existing background reference in an end user communication message."

The case proceeded to trial, but the parties still disputed whether claim 45 required all three elements to act on the same message. Yahoo! contended that an infringing program had to be configured to perform all three actions (receipt, insertion, and transmittal) on the same message. Accordingly, Yahoo! moved for supplementary claim construction of the term "said." In an effort to convey that all three actions had to be performed on the same message, Yahoo! proposed the following jury instruction:

> The use of the word "said" in a claim refers to an earlier use of the term in the claim, and more specifically, refers to the first or initial use of the term found in the claim. In grammatical terms, "[g]enerally, a term refers to an antecedent by repeating the antecedent identically except for preceding it with the word 'said' instead of 'a' or 'the.'"

Creative disagreed with Yahoo!'s interpretation of the claim as requiring that all three actions be performed on the same message. It contended that the claim would be infringed by a program that performed all three actions,

even if all three actions were not performed on the same message.

The district court did not resolve that dispute; instead, it linked the dispute to the construction of the term "an" preceding the first instance of "end user communication message" in the body of the claim. The district court decided to provide the jury with an additional paragraph at the end of the claim construction chart, which included standard constructions of the terms "an" and "said" along with its earlier ruling that claim 45 did not require sequential ordering. That paragraph stated:

> The use of the article "a" or "an" in a patent claim means "one or more" in claims containing the transitional phrase "comprising." Use of the word "said" in the beginning of a phrase indicates that it is referring to a previous use of the same or similar phrase. Further, claim 45 is an apparatus claim, which means that the claim recites structure—logic or source code—comprising a computer program. The claim does not recite steps or processes that must take place in a particular order.

That paragraph was featured extensively in the parties' closing arguments. In its initial summation, Creative asked the jury to refer to the court's additional instructions regarding "an" to address whether claim 45 requires a single message. Creative's attorney told the jury, "You heard a lot about one message, this message, different message. 'A' or 'an.' So if you look in the Claim 45, as defined by the Court, and it uses that phrase, it's one or more." Creative's attorney later applied that multiple message theory to a discussion of the three elements of claim 45, telling the jury that "if the logic, the code in the computer program was capable of doing these

three things, it infringes." He also proposed, as an alternative theory, that Yahoo! Messenger infringed even if the three claim elements "all have to be performed on the same message."

In Yahoo!'s summation, its attorney described two fundamental disagreements between the parties on infringement. First, must the "message or messages of all three limitations be the same?" Second, "are the individual messages separate messages or are they all just one message?" After discussing the three elements of claim 45, he concluded his infringement discussion by asking and answering a claim construction question: "Must the messages of all three be the same? Absolutely. That's what said means. There's the linkage."

Creative's attorney responded to that contention at the very outset of his rebuttal closing argument. His first words in rebuttal were:

> Ladies and Gentlemen, everything you just heard, every noninfringement argument you just heard is contradicted by the instructions in the back of your book attached to the chart [referring to the supplemental paragraph].

> What did he say, it's got to be one message. His Honor gave you an instruction, put it in the back of your book yesterday, one or more messages.

Following deliberations, the jury found that claim 45 was not invalid, that it was infringed both literally and under the doctrine of equivalents, and that the infringement was willful. Yahoo! moved for JMOL on invalidity and noninfringement. Both motions were denied. The

district court enhanced the jury's damages award and ordered an ongoing royalty despite Yahoo!'s efforts to design around the patent.

## II

On appeal, Yahoo! contends that the district court's claim construction was erroneous because it did not require that "each logical element operates on the same message." Specifically, Yahoo! contends that "[u]nder the district court's construction, Claim 45 is infringed by a system that receives a message from Albert to Brian, inserts a background reference into a second unrelated message from Carl to David, and transmits a third unrelated message from Edward to Frank."

Creative contends that Yahoo! waived its argument on appeal because it received the construction of the term "said" that it sought. However, the focus of Yahoo!'s appeal is not on the district court's construction of the term "said," but on the court's failure to instruct the jury that "all the limitations must be configured to operate on the same message." Appellant's Br. at 30. Although Yahoo! presented that argument to the district court, the court refused to rule on the issue or instruct the jury directly on that point.

When the issue arose at trial, counsel for Yahoo! argued that the claim language required that all three actions be performed on the same message. Counsel for Yahoo! explained, "It is one set of data. That's the said data in both of the – in all three of the claim elements." Counsel for Creative disagreed and argued that the accused program would infringe if the three actions operated on different messages. The trial court expressed skepticism that the claim required "the set of data where .

. . the receipt, the insertion, the transmit, that has to be the same." The court asked why the claim would not read on a program that "receive[s] one set of data, inserts into another set of data, transmits maybe another set," and told Yahoo!'s counsel, "you've got to persuade me that your position on this claim, that it's the same set of data that's received, inserted and transmitted can be correct."

Following that exchange, the district court took the matter under advisement. After a recess, the court decided to give the jury a supplementary instruction defining the words "a" or "an" and "said." The court declined to instruct the jury on whether the claim required all three actions to apply to the same message; as to that issue, the court stated, "That, in my estimation, is infringement—the question of infringement, that's for y'all to fight over and for the jury to resolve." Yahoo!'s counsel objected to the court's refusal to limit the scope of the claim to require that all the recited actions operate on a single message, but the court overruled the objection.

The district court's refusal to instruct the jury on the question whether the claim required all three elements to operate on the same message had the effect of leaving a critical question of claim construction to the jury. The court erred in leaving a central question of claim construction to the jury over Yahoo!'s objection. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360-62 (Fed. Cir. 2008).

The closing arguments demonstrate that the district court's instruction linking the construction of "an" and "said," and not addressing the "same message" issue raised by Yahoo! enabled Creative to argue to the jury that all three claim elements do not have to operate on the same message in order to infringe. After referring to

the district court's supplementary construction of "an" as "one or more," Creative told the jury "if the logic, the code in the computer program was capable of doing these three things, it infringes" without regard to whether all three elements operate on the same message. Yahoo! then urged the jury to find noninfringement based on the premise that all three elements must operate on the same message. Creative responded to that argument by again citing the district court's supplementary claim construction paragraph, contending that the elements can operate on "one or more" messages and that Yahoo!'s position violates the district court's construction that the claim elements need not be sequential.

Creative's broader claim construction is incorrect. Although the antecedent phrase, "an end user communication message," is broad enough to cover multiple messages, each use of the phrase "said end user communication message" still refers to the antecedent phrase. *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) ("The subsequent use of definite articles "the" or "said" in a claim to refer back to the same claim term does not change the general plural rule [of "an"], but simply reinvokes that non-singular meaning."). An infringing system must therefore contain logic configured to insert a background reference into the same messages that are received and transmitted by other logic in the program. That does not necessarily mean that the insertion logic must act on the message after it is received. And it does not mean that the every message in an infringing system must be received, inserted, and transmitted. Instead, it means that the claim does not cover a system that only receives a message, inserts a background reference into a different message, and then transmits a third message. Although the dissent adopts that interpretation, it is contrary to the claim

language because it would render the word "said" a nullity. *See Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."). The claim language makes clear that all three logical elements must act, at least once, on the same message or messages.

By linking the construction of "said" to the construction of "an" and the ruling on sequential limitations, the district court left that claim construction issue unresolved and allowed Creative to invite the jury to find infringement on a theory that is contrary to the proper construction of the asserted claim. Because the jury may have found infringement based on Creative's broader and incorrect theory of claim construction, it would be incorrect to rule that Yahoo! waived its right to challenge the district court's claim construction simply because Yahoo! received the construction of the term "said" that it proposed.

## III

Yahoo! also appeals the court's denial of its motion for JMOL of noninfringement. Yahoo! contends that under the district court's claim construction, as modified by our discussion above, Yahoo! Messenger lacks the second limitation of claim 45. That limitation requires the following:

> logic configured to insert a background reference to a stored advertisement into said end user communication message, wherein said logic configured to insert the background reference is further configured to insert said background reference responsive to an overwrite authorization.

The district court construed the term "end user communication message" to mean "[a] set of data transmitted over a communications network," and the term "overwrite authorization" to mean "[a]pproval to replace an existing background reference in an end user communication message . . . ." Based on those constructions, the second limitation of claim 45 requires logic configured to insert a background reference into a message responsive to an approval to replace an existing background reference in a message, where a message is a set of data transmitted over a communications network. Because the evidence would not permit a reasonable jury to find that Yahoo! Messenger satisfied the second limitation of claim 45 as properly construed, we reverse the district court's judgment with respect to infringement.

Yahoo! Messenger is end user software that must be installed on the computer of every end user. It gives users the option of selecting IMVironments, which are advertisements that can be inserted behind the chat window. Two users in a conversation can select IMVironments only if both users have enabled them. If IMVironments are enabled, a user can select an IMVironment (such as an advertisement for "Honda" or an advertisement for "Army"). When IMVironments are enabled, a corresponding IMV-ID (such as 1 or 7) will be inserted into the IMV-ID field of the outgoing message. Other fields in the message include user1, user2, IMV Flag (which indicates whether the sending user has enabled IMVironments), and the text of the message.

Yahoo! contends that Yahoo! Messenger does not infringe for two reasons. First, Messenger never inserts a background reference (or IMV-ID) into an existing message; instead, it just creates new messages and populates them with an IMV-ID. Second, Messenger does not insert

background references responsive to an approval to replace existing background references; instead, the approval is to put background references in the message in the first place. The accused "approval" functionality in Messenger is a checkbox that allows users to disable the insertion of the advertising backgrounds.

Creative contends that claim 45 requires only "conditional insertion" and that Yahoo! Messenger conditions insertion of IMV-IDs on an end user's selection of the checkbox that enables IMVironments. Claim 45, however, requires the insertion to be more than "conditional." The insertion must be responsive to an approval to replace an existing background reference in an end user communication message. The burden was on Creative, therefore, to identify evidence demonstrating that the checkbox in Yahoo! Messenger enables IMVironments to serve as the approval to replace an existing background reference in a message instead of merely the approval to insert background references in new messages.

In its brief, Creative focuses on one scenario purportedly demonstrating that Yahoo! Messenger contains logic configured to insert a background reference responsive to such an approval. Creative asks the reader to assume that two users, identified as "Randi" and "Millie," are having a conversation using Yahoo! Messenger and that both users have enabled IMVironments. If Randi sends Millie a message with the "Army" IMVironment chosen, his outgoing buffer will be populated with "Randi" as the Sender ID, "Millie" as the Recipient ID, "Army" as the IMV-ID, and "Enabled" as the IMV Flag. Once Randi sends the message, Millie's incoming buffer will contain the same values. If Randi then changes his IMVironment to "Honda" without sending a new message, the IMV-ID field in his outgoing buffer, which previously contained

"Army," will be replaced with "Honda." Randi can make such a change only if Millie continues to have IMVironments enabled. Creative thus contends that Millie's choice to enable or disable IMVironments is an approval to replace an existing background reference in an end user communication message. This scenario is depicted in the following demonstrative that Creative used at trial:



Creative's infringement scenario fails because it nullifies the third limitation of claim 45, which requires "logic configured to transmit *said* end user communication message with *the* background reference to a second site." To satisfy the third limitation, the message that is transmitted must contain *the* background reference that was inserted responsive to Millie's approval in the second limitation. The message that was initially transmitted did not contain the background reference that was inserted ("Honda"); instead, it contained the background reference that was replaced ("Army").

Creative alternatively contends that Messenger could satisfy the third limitation when Randi sends out a new message containing the inserted background reference to "Honda." That scenario fails because the "Honda" message that is transmitted is a different message than the "Army" message into which the IMV-ID was inserted.

Creative's last literal infringement theory focuses on Millie's incoming buffer. Creative contends that the insertion logic is located on the receiving computer when the previous IMV-ID in the buffer is replaced with the new IMV-ID. Such replacement is not insertion into a message because the entire buffer is overwritten when a new message is received. Creative also contends that the IMV-ID is replaced in a second memory location on the recipient computer that is used to keep track of the current IMV-ID to be displayed. That replacement, however, is not an insertion into a message, because the IMV-ID has been separated from the rest of the message and stored in a separate location on the computer. In finding that the jury had sufficient evidence to "find that a replacement occurs," the dissent overlooks the fact that the claim language requires not "replacement" but "logic configured to *insert* a background reference to a stored advertisement into said end user communication message . . . in response to an overwrite authorization."[2]

Having concluded that all of Creative's literal infringement theories fail, we turn to infringement under the doctrine of equivalents. Yahoo! contends that there

---

[2] Although the district court construed "overwrite authorization" as "[a]pproval to replace an existing background reference in an end user communication message [with another background reference]," that construction did not alter the meaning of "insert" in the second limitation of the claim.

was insufficient evidence to support a jury determination that Yahoo! Messenger has the equivalent of logic configured to "insert said background reference responsive to an overwrite authorization." Appellant's Br. at 41. To support a finding of infringement under the doctrine of equivalents, a patentee must provide particularized testimony and linking argument with respect to the "function, way, result" test. *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566-67 (Fed. Cir. 1996). Creative's only particularized testimony and linking argument supporting infringement under the doctrine of equivalents is the following testimony from its expert, David Klausner:

> Q: Now, did you review the patent in forming your opinions?
>
> A: Yes.
>
> Q: And did you take a look at the patent to determine what the function of the overwrite authorization was?
>
> A: I have.
>
> Q: And what portion of the patent was that?
>
> A: I think it's column 9, lines 35 through 48.
>
> Q: Is that the part highlighted here?
>
> A: Yes.
>
> Q: Now, this says, "If the approval configuration indicates that background references are not to be overwritten for a particular message, step 4-12 indicates the background references insertion proc-

ess terminates and then it says, "An approval configuration file is maintained" - in one embodiment - "in order to enable end user recipients to configure the background reference system and whether or not to overwrite existing background references in messages received by them."

Is that the part you relied on?

A:  Yes.

Q:  What -- using that, what's the function of the overwrite authorization?

A:  It's to provide approval for a replacement as His Honor has told us.

Q:  Now, if we could go to Exhibit 112, please, the enable button. I'm showing you the references [sic] box for the enable IMVironments button. What is the function of the enable IMVironments check box in the Yahoo Messenger program?

A:  To approve the replacement of the background reference.

Q:  Okay. And what is the way that the overwrite authorization in Claim 45 is achieved in a [sic] '432 patent?

A:  Well, also substantially the same way, by having program code written that will look at the condition and determine whether it's enabled or not.

Q:  And then what's the result with respect to the overwrite authorization in Claim 45?

A:  It is to have the program logic -- a logic code in the program to enable the approval to replace the background reference.

Q:  All right. Do you have an opinion on whether or not the overwrite authorization element of Claim 45 is found under the doctrine of equivalence in Yahoo!'s Messenger program?

A:  I do.

Q:  And what is that opinion?

A:  It is found - it's substantially the same function in substantially the same way with substantially the same result, and any difference between the claim as construed by His Honor and the accused product are insubstantial.

That testimony addresses only whether the IMVironments checkbox is equivalent to the overwrite authorization. It does not address the broader issue of whether Yahoo! Messenger has the equivalent of logic configured to "*insert* said background reference responsive to an overwrite authorization." For reasons addressed in our discussion of literal infringement, Yahoo! Messenger does not insert background references into existing messages.[3]

---

[3]    The dissent contends that we are adopting a different rationale than that presented by Yahoo! on appeal. However, Yahoo! appealed infringement under the doctrine of equivalents because Yahoo! Messenger lacks a "pre-existing background reference in the message to overwrite" and "does not use a message server to intercept the message packet and replace a pre-existing background reference with an IMV-ID." An infringement finding must be supported by evidence for each limitation, and Creative failed to submit evidence demonstrating

By reciting "logic configured to insert," the claims require replacement of existing background references in messages, and the only way the specification describes such replacement occurring is by intercepting the messages with a server. It is undisputed that Yahoo!'s system does not alter existing messages and does not intercept them with a server. Thus, there was insufficient evidence for a reasonable jury to conclude that Yahoo! Messenger infringed claim 45 under the doctrine of equivalents.

IV

Yahoo! also appeals the district court's denial of its motion for JMOL of invalidity based on the prior art references known as Goldschmitt and the Gold Guide. We conclude that the evidence was sufficient to support the jury's conclusion that neither Goldschmitt nor the Gold Guide disclosed inserting a background reference into a message responsive to an overwrite authorization. Both references described inserting background advertisements whenever they were available to be inserted. Neither reference disclosed a system that let users selectively receive advertisements.

Yahoo! places great weight on the following statement in Goldschmitt: "When the user commands to read the stored mail, the center 18 appends an advertisement, *if any*, to the message and transmits the message to the user." We conclude that a reasonable jury could interpret that statement as disclosing no more than that advertisements would invariably be inserted if any suitable advertisements were available. On that view, the state-

---

that Yahoo! Messenger inserts background references into existing messages either literally or under the doctrine of equivalents.

ment does not disclose a system that allows users to selectively receive advertisements. Yahoo! further contends that Goldschmitt's insertion was responsive to an "overwrite authorization" because users authorized the insertion of background advertisements by signing up for the service. However, a system in which users opt in to the advertising-supported service does not disclose the second limitation of the claim, which requires "logic configured" to insert background references responsive to an overwrite authorization. Because neither of the references disclosed inserting a background reference into a message responsive to an overwrite authorization, the district court correctly denied Yahoo!'s motion for JMOL as to invalidity.

Each party shall bear its own costs for this appeal.

**AFFIRMED IN PART and REVERSED IN PART**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

CREATIVE INTERNET ADVERTISING
CORPORATION,
*Plaintiff-Appellee,*

v.

YAHOO!, INC.,
*Defendant-Appellant.*

2010-1215

Appeal from the United States District Court for the Eastern District of Texas in case No. 07-CV-0354, Magistrate Judge John D. Love.

CLEVENGER, *Circuit Judge*, dissenting-in-part.

First, a few words about the claim in suit. Claim 45 is drawn to a computer program which contains logic configured to do things to an "end user communication message." The "things" for which the logic is configured are: (a) receipt of "an" end user communication message from a first site; (b) insertion of a background reference to a stored advertisement in "said" end user communication message, with the logic further configured for insertion of the background reference in response to an overwrite

authorization; and (c) transmission of "said" end user communication message with the background reference to a second site.

Yahoo! sought unsuccessfully to have the claim treated in essence as a method claim, with the things for which the logic is configured necessarily being performed as steps in the order claimed. The district court instead held that the claim is to an apparatus with no requirement for sequential configuration of the required logic. Yahoo! also sought to have "end user communication message" be construed to mean "a written communication intended for an end user." The district court disagreed, and defined the term as "a set of data transmitted over a network." Yahoo! does not appeal either point.

Coming back to claim 45, the "end user communication message" is just "a set of data transmitted over a network." And an infringing computer program need only have logic configured to permit (a) receipt of a set of data from a first site; (b) insertion of the claimed background reference in a set of data in response to an overwrite authorization; and (c) transmission of a set of data with the background reference to a second site. The logic does not have to be executed in any particular order.

The jury heard testimony that Yahoo!'s Messenger computer program has logic configured to do each of the three things called for by claim 45. Nonetheless, the majority reverses the jury verdict of infringement on two grounds. First, the majority revises the district court's claim construction to require the limitations of claim 45 to act upon a single message. Second, the majority reverses the jury's finding of infringement under the doctrine of equivalents. I respectfully disagree with the majority's

reasoning and conclusion on both grounds.[1]  We should sustain the jury's verdict of literal and equivalents infringement.

I

Yahoo! hinges its appeal on a single claim construction argument and asks the Court "[w]hether the district court erred in construing the phrase 'said end user communication message.'"  Appellant Br. at 1.  Yahoo!'s argument relies upon reading the phrase "said end user communication message," used in the second and third limitations of claim 45, as dependent upon the phrase "an end user communication message" used in the first limitation.  Yahoo! argues that the use of the word "said" means that the end user communication message (or "set of data" as construed by the district court) referenced in the second and third limitations of claim 45 must be the exact same set of data that is received over the network in the first limitation.  The majority sides with Yahoo!.

Yahoo! understands that the district court's interpretation of "said" in connection with "a" or "an" in claim 45 means that the claimed logic configurations need not be performed on the same set of data.  That is why Yahoo! bases its appeal on whether the district court erred in construing the "said end user communication message" limitation.  The majority misrepresents Yahoo!'s argument when it contends that "the focus of Yahoo!'s appeal is not on the district court's construction of the term 'said,' but on the court's failure to instruct the jury that 'all the limitations must be configured to operate on the same message.'"  Maj. Op. at 7.  Yahoo!'s argument on appeal is

---

[1]  I agree with the majority's reasoning and conclusion on the validity issue.

exactly that the use of the phrase "said end user communication message" in connection with the phrase "an end user communication message" requires each limitation to act upon the same message.

Yahoo!'s argument is barred by our case law. We have made clear that the use of an indefinite article such as "a" or "an" carries the meaning of "one or more." *See KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000). The "one or more" construction is a bedrock rule of patent law, with very limited exceptions, none present in this case. *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008). We have also clarified that "[t]he subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning." *Id.* Thus, the use of the term "said" does not require, or even imply, that each limitation must execute upon a single message when the claimed apparatus is used. Instead, "said end user communication message" merely references "one or more" end user communication messages. "Said" is an anaphoric phrase that merely refers back to the initial antecedent phrase. *Baldwin Graphic*, 512 F.3d at 1343 ("Because the initial phrase carries no definitive numerosity, the anaphoric phrases do not alter that meaning in the slightest."). Yahoo!'s claim construction argument on the meaning of the term "said" fails under our precedent. Indeed, the district court carefully and precisely instructed the jury as to what "an end user communication message" means in claim 45 under *Baldwin Graphic*: the second and third limitations can be performed on any set of data, not necessarily the set of data that is received in the first limitation.

The majority wrongly accuses the district court of dereliction of duty for failing to instruct the jury that all three logical elements must operate on the same message. First, in the context of claim 45, *Baldwin Graphic* prohibits such an instruction. And, indeed, the district court instructed the jury exactly to the contrary, namely that the claim does not require all three logical elements to operate on the same message. When the district court told the jury that "said end user communication message" merely refers back to "an end user communication message," which means one or more end user communication messages, the jury and the parties knew that the three logical elements need not be performed on a single message.

In addition to discounting *Baldwin Graphic* and erroneously revising the district court's claim construction, the majority fails to confront that claim 45 reads as an apparatus claim on its face. Instead, the majority repeatedly treats the claim as a method claim with steps that must be performed for infringement. *See, e.g.*, Maj. Op. at 10 ("The claim language makes clear that all three logical elements must act, at least once, on the same message or messages."). However, requiring a concerted execution of the claimed logic upon a single message is not the proper test for infringement of an apparatus claim. Instead, the proper question for infringement is whether the accused computer program contains logic configured to meet each limitation, regardless of how or when the claimed logic is used.

Yahoo! appeals the jury's finding that Yahoo! Messenger meets the second limitation of claim 45 which requires insertion of a background reference into an end user communication message. Yahoo! argues that Yahoo! Messenger cannot infringe because it never "replaces" or

"overwrites" a pre-existing background reference in a message; instead Yahoo! claims that Yahoo! Messenger always creates a new message when an IMV-ID is selected. However, at trial, Creative used the concept of message buffers to demonstrate that Yahoo! Messenger contains logic configured to replace a background reference in a set of data.[2]

Dr. Goldberg, Yahoo!'s technical expert, explained to the jury that a message buffer is a set of data contained at a location in computer memory. He further explained to the jury that when a so-called "new instant message" is sent or received by Yahoo! Messenger at least some of the data in the buffers can be replaced. He stated:

Q. The message, when it's received, sits in memory, and then it's overwritten by the next message, correct?

A. Yes. It's no longer accessible.

Q. But it's overwritten by the next message, is my question.

A. Let's be clear. Computers have incoming message buffers, the memory that when an incoming message comes in, that's where it goes, okay? And the computer can then use that data that came in.

---

[2] While the majority appears to find a distinction between the words "insert," "overwrite," and "replace," I note that the parties used these terms interchangeably when referring to the second limitation of claim 45. This is because the "insertion" occurs into a message responsive to an "overwrite authorization." Thus, the "insertion" can also be referred to as a "replacement" or "overwrite" and the jury was instructed accordingly.

The next message coming in is likely to be put right where that previous message was. It may or may not. But it could overwrite it. So the first message comes in, the next message comes in and overwrites it. And so the first message is gone.

Q. Right. It's overwritten.

A. I think it's fair to say in that memory, the first message is overwritten by the second one. Yeah, I have no problem with that.

Dr. Goldberg later confirmed that the buffer data is replaced by each subsequent incoming or outgoing instant message in Yahoo! Messenger.

Q. Okay. And, in fact, in the other computer program, there's memory that's allocated once this chat session starts, and every message received is put in the same memory location and overwrites the previous message. You agree with that, don't you?

A. If the same location is being used every time for that buffer, the data coming in, then I agree with that.

Q. Okay. And you said you think it's likely in the Yahoo! Messenger program, it does happen that way?

A. Yes, I do.

Yahoo! argues that the jury misunderstood its expert's testimony and that each time any modification is made to the message buffer it is the result of a new instant message being created. However, Yahoo!'s argument is rooted

in its proposed construction that "end user communication message" means "a written communication intended for an end user." This construction was rejected by the district court and Yahoo! does not appeal the rejection. The district court's unappealed construction states that "an end user communication message" is merely "a set of data transmitted over a network." The record contains sufficient evidence to allow a reasonable jury to find that a replacement occurs within the set of data contained in the message buffers.

The majority additionally holds that the jury erred by finding literal infringement of the third limitation in claim 45. Yahoo!'s argument regarding the third limitation is that because Yahoo! Messenger creates a new instant message each time a user modifies a background, it will never transmit an instant message on which the "insertion" logic of the second limitation has already executed. This argument is again rooted in Yahoo!'s argument to the district court that "end user communication message" means "a written communication intended for an end user" and further requires that claim 45 be treated as a method claim with "steps" that must be performed in the listed order.

The third limitation of claim 45 requires "logic configured to transmit said end user communication message with the background reference to a second site." As previously discussed, Yahoo! does not appeal the construction of "end user communication message" as "a set of data." There is no factual dispute in the record that Yahoo! Messenger in fact transmits sets of data with background references to a second site and the majority points to no evidence to suggest otherwise. Yahoo!'s "ordered steps" argument must also be rejected. Claim 45 is an apparatus claim and the district court properly

instructed the jury that the limitations of claim 45 do not need to be performed in the listed order.

For these reasons, we should affirm the jury's finding of literal infringement.

## II

I also dissent from the majority's reversal of the jury verdict of infringement under the doctrine of equivalents. Because there can be no dispute that Yahoo!'s computer program meets the first and third limitations in claim 45, the only equivalents issue relates to the second limitation. Yahoo! thus appeals from a jury verdict and denial of judgment as a matter of law finding that the IMVironments enable checkbox is equivalent to the "overwrite authorization" in claim 45. Yahoo! contends that the jury lacked sufficient evidence to decide that only insubstantial differences separate Yahoo!'s enable checkbox from the claimed overwrite authorization. *See* Appellant's Br. at 42 ("The district court's decision was erroneous because the differences between the IMVironments enable checkbox and an 'overwrite authorization' are substantial.").

The majority finds Creative's expert testimony on the doctrine of equivalents lacking, even though Creative's expert, Mr. Klausner, described in detail how the function, way, result test should be applied to both the "overwrite authorization" in claim 45 and the enable IMVironments checkbox in Yahoo! Messenger. By any measurement (other than the majority's), Creative's equivalents evidence meets the relevant test. *See Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) ("a patentee must [] provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed

invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents").

While it appears that the majority finds Mr. Klausner's testimony on the appealed issue sufficient, *see* Maj. Op. at 17, the majority adopts a different rationale from that presented by Yahoo! and suggests that Creative erred by failing to introduce equivalents testimony regarding other aspects of the second limitation. There is no basis in our case law for requiring particularized testimony and linking argument on aspects of a limitation that are not argued to be infringed under the doctrine of equivalents. Of course this is so because it is precisely the doctrine of equivalents argument — here whether the IMVironments checkbox is equivalent to the "overwrite authorization" — that needs particularized testimony, not other aspects of the claim. The majority's suggestion that more is required is mistaken. There is certainly sufficient particularized testimony and linking argument on the "overwrite authorization."