NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MEDTRONIC, INC., MEDTRONIC VASCULAR, INC.,**
*Appellants*

**v.**

**TELEFLEX LIFE SCIENCES LIMITED,**
*Appellee*

---

2022-1605, 2022-1606

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2020-01341, IPR2020-01342.

---

Decided: March 21, 2024

---

BRITTANY BLUEITT AMADI, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, argued for appellants. Also represented by JENNIFER L. GRABER; TASHA JOY BAHAL, MARK CHRISTOPHER FLEMING, HANNAH ELISE GELBORT, MADELEINE C. LAUPHEIMER, JEFFREY SOLLER, Boston, MA.

SANJIV P. LAUD, McCurdy, LLC, Minneapolis, MN, argued for appellee. Also represented by PETER M.

KOHLHEPP, TARA CATHERINE NORGARD, J. DEREK VANDENBURGH, JOSEPH W. WINKELS, Carlson, Caspers, Vandenburgh & Lindquist PA, Minneapolis, MN.

————————————

Before LOURIE, PROST, and CHEN, *Circuit Judges.*

PROST, *Circuit Judge.*

Medtronic, Inc. and Medtronic Vascular, Inc. (collectively, "Medtronic") filed two inter partes review ("IPR") petitions asserting that claims 1, 2, 4, 5, and 7–14 of U.S. Patent No. 8,142,413 ("the '413 patent"), owned by Teleflex Life Sciences Ltd. ("Teleflex"), are unpatentable. The Board concluded in two decisions that the '413 patent was not shown to be unpatentable over the asserted prior art. *Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*, No. IPR2020-01341, 2022 WL 443889 (P.T.A.B. Feb. 7, 2022) ("*'1341 Decision*"); *Medtronic, Inc. v. Teleflex Life Scis. Ltd.*, No. IPR2020-01342, 2022 WL 444084 (P.T.A.B. Feb. 7, 2022) ("*'1342 Decision*"). Medtronic appeals, and we affirm.

BACKGROUND

I

The '413 patent is directed to methods of using a coaxial guide catheter in interventional cardiology procedures. *See* '413 patent Abstract, claim 1. The particular "invention relates to methods and apparatus[es] for increasing backup support for catheters inserted into coronary arteries from the aorta." *Id.* at col. 1 ll. 14–17. The '413 patent describes a typical procedure of inserting a guide catheter "through the aorta and into the ostium of the coronary artery" for treatment. *Id.* at col. 1 ll. 35–36. "[T]ough lesions" in coronary arteries "can create enough backward force to dislodge the guide catheter from the ostium of the artery being treated," which "can make it difficult or impossible . . . to treat certain forms of coronary artery disease." *Id.* at col. 1 ll. 42–45. Per the '413 patent, "the presence of the

coaxial guide catheter provides additional backup support to make it less likely that the coaxial guide catheter [and] guide catheter combination will be dislodged from the ostium of the coronary artery while directing the coronary therapeutic device past a tough lesion such as a stenosis or a chronic arterial occlusion." *Id.* at col. 4 ll. 38–44.

The coaxial guide catheter "is deliverable through standard guide catheters by utilizing a guidewire rail segment to permit delivery without blocking use of the guide catheter." *Id.* at col. 2 ll. 59–62. This coaxial guide catheter "includes a tip portion, a reinforced portion, and a substantially rigid portion." *Id.* at col. 3 ll. 35–36. The tip portion is distal, or further in the body, to the substantially rigid portion, which is "typically located at the most proximal end [closest to the entrance into the body] of the coaxial guide catheter." *Id.* at col. 3 ll. 66–67; *see* col. 6 ll. 15–16. The '413 patent also discloses "cardiac treatment device[s]," or interventional cardiology devices ("ICDs"), that "may be passed through the coaxial guide catheter within the guide catheter and into the coronary artery." *Id.* at col. 4 ll. 35–38.

Figures 8 and 9 illustrate the catheters in the body.



*Id.* at Figs. 8, 9 (showing guide catheter 56 and coaxial guide catheter 12).

An embodiment specifies the following ordered steps when using a coaxial guide catheter:

> In operation, a guide catheter 56 is inserted into a major blood vessel in the body such as aortic arch 58 over guidewire 64 and the distal end 68 of guide catheter 56 is brought into proximity of ostium 60 of a smaller branch blood vessel, such as coronary artery 62, that it is desired to enter. Coaxial guide catheter 12, with tapered inner catheter 14, is inserted through guide catheter 56 and over guidewire 64. Guide catheter 56, guidewire 64, coaxial guide catheter 12, and tapered inner catheter 14 are manipulated to insert tapered inner catheter tip 42 into the ostium 60 of the blood vessel that branches off from the major blood vessel. The bump tip 22 of coaxial guide catheter 12 is inserted with tapered inner catheter tip 42 well into ostium 60 of coronary artery 62 or other blood vessel until bump tip 22 of coaxial guide catheter 12 achieves a deep seated position. Tapered inner catheter 14 is then withdrawn from the lumen of coaxial guide catheter 12. An interventional cardiology treatment device such as a catheter bearing a stent or a balloon (not shown) is then inserted through the lumen of coaxial guide catheter 12 which remains inside guide catheter 56.

*Id.* at col. 9 l. 51–col. 10 l. 3.

Claim 1, the sole independent claim, is representative and recites:

> A method of providing backup support for an [ICD] for use in the coronary vasculature, the [ICD] being adapted to be passed through a standard guide catheter, the standard guide catheter having a

continuous lumen extending for a predefined length from a proximal end at a hemostatic valve to a distal end adapted to be placed in a branch artery, the continuous lumen of the guide catheter having a circular cross-sectional inner diameter sized such that [ICDs] are insertable into and through the lumen, the method comprising:

[1.a] inserting the standard guide catheter into a first artery over a guidewire, the standard guide catheter having a distal end;

[1.b] positioning the distal end of the standard guide catheter in a branch artery that branches off from the first artery;

[1.c] inserting a flexible tip portion of a coaxial guide catheter defining a tubular structure having a circular cross-section and a length that is shorter than the predefined length of the continuous lumen of the standard guide catheter, into the continuous lumen of the standard guide catheter, and,

[1.d] further inserting a substantially rigid portion that is proximal of, operably connected to, and more rigid along a longitudinal axis than the flexible tip portion, into the continuous lumen of the standard guide catheter, the substantially rigid portion defining a rail structure without a lumen and having a maximal cross-sectional dimension at a proximal portion that is smaller than the cross-sectional outer diameter of the flexible tip portion and having a length that, when combined with the length of the flexible distal tip portion, defines a total length of the device along the longitudinal axis that is longer than the length of the continuous lumen of the guide catheter;

[1.e] advancing a distal portion of the flexible tip portion distally beyond the distal end of the

standard guide catheter and into the second artery such that the distal portion extends into the second artery and such that at least a portion of the proximal portion of the substantially rigid portion extends proximally through the hemostatic valve; and

[1.f] *inserting the [ICD] into and through the continuous lumen of the standard guide catheter alongside of the substantially rigid portion* and advancing the [ICD] through and beyond a lumen of the flexible tip portion into contact with or past a lesion in the second artery.

'413 patent claim 1 (emphasis added).[1]

For ease of comprehension, we refer to the claimed steps using the following shorthand:

1.a: inserting the standard guide catheter;

1.b: positioning the standard guide catheter;

1.c: inserting a coaxial guide catheter;

1.d: inserting a substantially rigid portion;

1.e: advancing the flexible tip portion;

1.f: inserting and advancing the ICD.

## II

Medtronic filed two petitions for IPR of claims 1, 2, 4, 5, and 7–14 of the '413 patent. One petition asserted unpatentability over Itou[2] and Ressemann.[3] *'1341 Decision*, 2022 WL 443889, at \*6. The other asserted obviousness

---

[1]    We adopt the Board's labelling of the claimed steps.
[2]    U.S. Patent No. 7,736,355 ("Itou").
[3]    U.S. Patent No. 7,604,612 ("Ressemann").

over Kontos[4] and Adams.[5]    *'1342 Decision*, 2022 WL 444084, at *5.

The Board determined that the '413 patent was not shown to be unpatentable over the asserted prior art. In reaching this conclusion, the Board first construed claim 1 to require performing the claimed steps in the recited order. *'1341 Decision*, 2022 WL 443889, at *8–10; *'1342 Decision*, 2022 WL 444084, at *6–8. Addressing Itou and Ressemann, the Board concluded that Itou does not anticipate claim 1, that claim 1 is not obvious over Itou, and that a skilled artisan would not have been motivated to combine Itou and Ressemann. *'1341 Decision*, 2022 WL 443889, at *14–25. Addressing Kontos and Adams, the Board concluded that claim 1 was not shown to be unpatentable as obvious over Kontos and that a skilled artisan would not have been motivated to combine Kontos and Adams. *'1342 Decision*, 2022 WL 444084, at *10–13.

Medtronic timely appealed both decisions. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

Medtronic argues that the Board erred by (1) construing claim 1 to require sequential performance of the recited steps and (2) concluding that claim 1 was not shown to be obvious over the asserted prior art. We first address claim construction and then address the Board's conclusions of nonobviousness.

## I

We review the Board's ultimate claim construction and determinations based on intrinsic evidence de novo and any subsidiary factual findings for substantial evidence.

---

[4]    U.S. Patent No. 5,439,445 ("Kontos").
[5]    U.S. Patent App. Pub. No. 2004/0010280 ("Adams").

*Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1339 (Fed. Cir. 2020).

Medtronic argues that the Board improperly construed claim 1 to require performing the claimed steps in the recited order. Medtronic and Teleflex broadly agree that most recited steps must be performed in order. They narrowly dispute when inserting the ICD occurs during the performance of claim 1's recited steps. Teleflex argues that inserting the ICD can occur only *after* advancing the flexible tip portion. Medtronic argues that claim 1 is broader and also permits simultaneously inserting the ICD and a coaxial guide catheter. For the reasons that follow, we affirm the Board's construction.

"As a general rule, unless the steps of a method claim actually recite an order, the steps are not ordinarily construed to require one." *Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, 764 F.3d 1392, 1398 (Fed. Cir. 2014) (cleaned up). "However, a claim requires an ordering of steps when the claim language, as a matter of logic or grammar, requires that the steps be performed in the order written, or the specification directly or implicitly requires an order of steps." *Id.* (cleaned up). We interpret a claim in view of the claim language, the specification, the prosecution history, and, where relevant, extrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

We start with the claim language. Our focus is on the inserting and advancing the ICD step (step 1.f), which recites, in part, "inserting the [ICD] into and through the continuous lumen of the standard guide catheter alongside of the substantially rigid portion." '413 patent claim 1. This language demonstrates that the flexible tip portion is advanced (step 1.e) before inserting the ICD. The claim language suggests this order by reciting inserting the ICD "alongside of *the* substantially rigid portion." *Id.* (emphasis added). Although not an ironclad rule, when the current step of a method claim refers to a previous step using the

definite article "the," the claim language indicates that the previous step occurs sequentially before the current step. *E.g.*, *Wi-Lan, Inc. v. Apple Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016). Here, the antecedent basis for the substantially rigid portion in the inserting and advancing the ICD step (step 1.f) is the substantially rigid portion in the inserting a substantially rigid portion and advancing the flexible tip portion steps (steps 1.d and 1.e). Thus, the logic of claim 1 demonstrates that the inserting and advancing the ICD step follows the advancing the flexible tip portion step.

The physical requirements of the substantially rigid portion confirm our understanding of the proper order of claim 1's steps. The step of inserting a substantially rigid portion (step 1.d) recites that the substantially rigid portion is "proximal of" and "operably connected to" the "flexible tip portion." '413 patent claim 1. Because the two parts are "operably connected," inserting the substantially rigid portion (step 1.d) cannot happen without first inserting the flexible tip portion of the coaxial guide catheter (step 1.c). The advancing the flexible tip portion step (step 1.e) also suggests that the substantially rigid portion is not in its final position until completion of this step because the flexible tip portion is advanced "such that at least a portion of the proximal portion of the substantially rigid portion extends proximally through the hemostatic valve." *Id.*

It is important when the substantially rigid portion is in its final position because inserting the ICD "into and *through*" the standard guide catheter occurs "alongside of the substantially rigid portion." *Id.* (emphasis added). The use of "into and through" indicates that the ICD moves through the standard guide catheter during the inserting and advancing the ICD step. This movement, which is "alongside of" the substantially rigid portion, cannot logically occur "alongside of" unless the substantially rigid portion is already positioned inside the standard guide catheter. Since the substantially rigid portion is not in its final position until completion of the advancing the flexible

tip portion step (step 1.e), the logic of claim 1 suggests that the inserting and advancing the ICD step must occur after advancing the flexible tip portion.

Our conclusion that claim 1 requires performing its steps in the recited order is consistent with the specification. The specification discloses an ordered performance of the recited steps in claim 1. '413 patent col. 4 ll. 17–38; *id.* at col. 9 l. 51–col. 10 l. 3.[6]

The specification also touts the advantages of performing claim 1's steps in the recited order. Claim 1 recites "[a] method of providing backup support." The specification states that "the interventional cardiology art would benefit from the availability of a system that would be deliverable through standard guide catheters for providing backup support by providing the ability to effectively create deep seating in the ostium of the coronary artery." '413 patent col. 2 ll. 51–55. The '413 patent specifies that "the presence of the coaxial guide catheter provides additional backup support to make it less likely that the coaxial guide catheter [and] guide catheter combination will be dislodged from the ostium while directing the coronary therapeutic device past a tough lesion such as a stenosis or a chronic arterial occlusion." *Id.* at col. 4 ll. 38–44. The '413 patent thus implies that the benefit of backup support during delivery of an ICD occurs when the coaxial guide catheter is appropriately positioned, which is after the flexible tip portion is advanced. These statements provide additional support for our conclusion that claim 1 requires inserting and advancing the ICD *after* advancing the flexible tip portion.

---

[6] Although this embodiment also discloses the intermediate steps of inserting and removing a tapered inner catheter, claim 1, as a comprising claim, is embodied even with the performance of additional, unclaimed steps.

Medtronic presents several arguments against this conclusion. Medtronic first argues that "alongside of" suggests a broader meaning than the meaning we adopt. According to Medtronic, inserting the ICD can be "alongside of" the substantially rigid portion when both the ICD and a coaxial guide catheter are inserted simultaneously. Appellants' Br. 35–36. Medtronic references two cars pulling up to a stoplight "alongside of" each other, which suggests simultaneity. While Medtronic's argument presents a plausible meaning of "alongside of" in a vacuum, for the reasons discussed above, Medtronic's construction is not a persuasive reading in the context of the claim language and the specification. After all, "[t]he only meaning that matters in claim construction is the meaning in the context of the patent." *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016). In context, the antecedent basis language and the physical requirements of the substantially rigid portion require that inserting the ICD occurs after the substantially rigid portion is already positioned inside the standard guide catheter.

Additionally, Medtronic agrees that most steps in claim 1 must be performed in order. Medtronic does not dispute that inserting and positioning the standard guide catheter (steps 1.a and 1.b) must occur before inserting a coaxial guide catheter and substantially rigid portion (steps 1.c and 1.d) and advancing the flexible tip portion (step 1.e). Medtronic also acknowledges that *advancing* the ICD cannot occur until after advancing the flexible tip portion.[7] The fact that all other steps must be performed in order, while not dispositive, suggests that claim 1

---

[7]    Before the Board, Medtronic's expert agreed during deposition that the only disputed step, the step of inserting the ICD, "has to take place after the prior steps that are recited" in claim 1, including the advancing the flexible tip portion step. J.A. 12529.

requires performance of its steps in the recited order. *See Mformation Techs.*, 764 F.3d at 1399–1400 ("Further, we note that the other sub-steps in claim 1 inherently require an order-of-steps."). *But cf. Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1351–53 (Fed. Cir. 2022) (construing some steps to have a required order but permitting sequential or simultaneous performance for other steps based on embodiments in the specification); *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008) (reaching a similar conclusion based on claim differentiation). Without any basis in the claim language or the specification, it would indeed be unnatural to read every part of the claimed method to require an ordered performance except for one half of one step (inserting the ICD).

Medtronic further argues that dependent claims 6, 10, and 11 indicate that claim 1 should not be read to require an ordered performance. Claim 6 depends from claim 1 and recites the additional steps of inserting and removing a tapered inner catheter. '413 patent claim 6. Claims 10 and 11 depend from claim 9, which recites the additional step of "extending the [ICD] through a proximal side opening" of the flexible tip portion. *Id.* at claim 9. Claims 10 and 11 recite additional requirements for extending the ICD through the proximal side opening. Medtronic argues that these claims mean claim 1 cannot be read in the order written because reading the dependent claims together with the independent claim in the order written would result in nonsensical interpretations of the dependent claims. Appellants' Br. 37–38, 38 n.4; Reply Br. 11–13. Medtronic's argument appears to rest on the assumption that a requirement to perform the claimed steps in the recited order mandates blindly reading the dependent claims to require performing all six steps of claim 1 in order and then, after completing the steps of claim 1, performing the steps of the dependent claims in the recited order. But this argument has no support in our reasoning here or the logic and

grammar of the claims. When the dependent claim steps may occur in the overall context of claim 1 is a matter of the logic and grammar of the dependent claims, read in light of the specification (and the claim(s) from which they depend). The dependent claims here do not illuminate when the specific steps in claim 1 must be performed. Medtronic's reliance on them is unpersuasive.

For the foregoing reasons, we affirm the Board's construction of claim 1.

## II

We now turn to Medtronic's challenges to the Board's conclusions that a skilled artisan would not have combined Itou and Ressemann, that Kontos does not render claim 1 unpatentable for obviousness, and that a skilled artisan would not have combined Kontos and Adams.[8] What the prior art discloses and the presence or absence of a motivation to combine are factual questions that we review for substantial evidence. *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1378 (Fed. Cir. 2023). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1324 (Fed. Cir. 2017) (cleaned up).

## A

We first address Medtronic's challenge to the Board's finding in the *'1341 Decision* that a skilled artisan would not have combined Itou and Ressemann.

---

[8] Because Medtronic argues that Itou anticipates claim 1 only if we construe claim 1 not to require a specific order, Reply Br. 27–28, we do not address Medtronic's anticipation argument. Medtronic also does not appeal the Board's conclusion that claim 1 would not have been obvious over Itou.

Itou discloses "an intravascular foreign matter suction assembly" designed to suck, sample, and remove "foreign matter such as a thrombus or an embolus" from a blood vessel. J.A. 1488. Ressemann discloses emboli protection devices that occlude blood flow with an inflatable seal to facilitate removal of particulates released while treating a lesion. J.A. 1493, 1569, 1571. Medtronic proposed inserting an ICD, like "a stent or balloon catheter, such as that taught by Ressemann," "into and through the continuous lumen of Itou's [general catheter] (1) and suction catheter (2)." J.A. 15093. Medtronic's articulated motivation to combine, based on the background knowledge of its expert, was that it would be beneficial to remove emboli while delivering a stent and more convenient to use one device for embolic removal and ICD delivery. J.A. 15093–94. The Board rejected Medtronic's articulated motivation to combine because, among other reasons, "inserting an [ICD] through Itou's lumen would block Itou's distal tip from properly interacting with and aspirating a thrombus or embolus" and because introducing an ICD into a suction catheter "creates a real risk of pushing out smaller, more mobile pieces of residual thrombotic material from the catheter and embolizing these further into the vascular system being treated." *'1341 Decision*, 2022 WL 443889, at *24.

Medtronic presents three primary reasons why the Board erred. First, Medtronic argues that the Board failed to properly analyze Medtronic's proposed combination, seizing on the Board's statements that the exact contours of Medtronic's proposed combination were unclear. *Id.* at *21. We reject this argument. Medtronic proposed meeting claim 1's inserting and advancing the ICD step by inserting an ICD through a suction catheter like Itou's. J.A. 15093. The Board analyzed exactly this combination. *'1341 Decision*, 2022 WL 443889, at *21–24.

Second, Medtronic argues that the Board ignored Medtronic's evidence as to why a skilled artisan would have

combined Itou and Ressemann.  But the Board did not ignore Medtronic's evidence.  Contrary to Medtronic's assertion, the Board compared Medtronic's arguments and evidence for why a skilled artisan would have combined Itou and Ressemann to Teleflex's arguments and evidence for why a skilled artisan would not make Medtronic's proposed combination and found Teleflex's arguments more persuasive.  *'1341 Decision*, 2022 WL 443889, at *22–24.  The Board, relying on the testimony of Teleflex's expert, found that inserting an ICD, as taught by Ressemann, through a suction catheter like Itou's "would block Itou's distal tip from properly interacting with and aspirating a thrombus or embolus" and would create a risk of patient harm.  *Id.* at *23–24.  Substantial evidence supports this finding.  J.A. 10491–92 ¶¶ 198–99, 201 (Teleflex's expert explaining that inserting a device into Itou's suction catheter before suction would interfere with suction and impair the functioning of Itou); J.A. 10813–15 ¶¶ 132–34 (Teleflex's expert explaining that inserting a device into Itou's suction catheter after suction creates a risk of dislodging thrombi, which can cause strokes or heart attacks).  The Board properly "weighed the competing evidence regarding the relevant tradeoffs" and concluded that the drawbacks "would have outweighed any reason to combine."  *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 796 (Fed. Cir. 2021).

Third, Medtronic argues that the Board required a teaching, suggestion, or motivation from Itou in violation of *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 418–19 (2007), "by adopting Teleflex's argument that there is no reason why a skilled artisan would want or need to insert a device through Itou because Itou does not disclose doing so," Appellants' Br. 68 (cleaned up).  Medtronic's argument and use of "because" does not accurately reflect the Board's analysis, which stated that "there is no reason why a [skilled artisan] would want or need to insert a device through Itou, *and* Itou does not disclose doing so."  *'1341 Decision*, 2022 WL 443889, at *24 (emphasis added).

We thus affirm the Board's finding that a skilled artisan would not have combined Itou and Ressemann (and its overall conclusion of nonobviousness based on that finding).

### B

We next address Medtronic's challenge to the Board's conclusion in the *'1342 Decision* that Kontos alone does not render claim 1 unpatentable for obviousness.

Kontos discloses a support catheter (what is mapped to claim 1's coaxial guide catheter) that protects the fragile balloon of a balloon catheter (what is mapped to claim 1's ICD) as the balloon passes through a guide catheter. J.A. 1590, 1601. Kontos allows a physician to deliver a balloon catheter into a coronary vessel with a "greatly reduced risk of bending or kinking." J.A. 1598. Medtronic's petition asserted that Kontos met the inserting and advancing the ICD step of claim 1 because "Kontos explains that support assembly 10 can be advanced first, followed by [balloon] catheter 40." J.A. 18060 (citing J.A. 1601). The Board concluded that Kontos did not render claim 1 obvious because no evidence met claim 1's requirement of inserting the ICD after advancing the flexible tip portion. *'1342 Decision*, 2022 WL 444084, at *11.

Medtronic first argues that the Board ignored critical portions of Kontos's disclosure in concluding that Kontos alone did not render claim 1 obvious. But the Board assessed the narrow presentation of the evidence in Medtronic's petition, which relied on certain express disclosures of Kontos. To meet the limitation of inserting and advancing the ICD under the construction the Board adopted (which we have affirmed), Medtronic's petition cited one paragraph in Kontos's disclosure and expert testimony addressing the combination of Kontos and Adams. J.A. 18060 (citing J.A. 1601, 14166–67 ¶¶ 201, 203). In its reply, Medtronic did not address this argument at all. J.A. 18574 (arguing only that Teleflex "incorrectly alleges

that the claims require a specific order of operations"). The Board concluded that although Medtronic offered evidence of Kontos advancing the ICD after advancing the flexible tip portion, Medtronic provided no evidence that Kontos disclosed a key aspect of claim 1: advancing the flexible tip portion beyond the distal end of the standard guide catheter *before* inserting the ICD into the proximal end of the standard guide catheter. *'1342 Decision*, 2022 WL 444084, at *10–11.[9]  Considering the lack of evidence presented to the Board, substantial evidence supports its conclusion.

On appeal, Medtronic paints a picture of the record where the petition presented a clear argument for why a skilled artisan would have modified the teachings of Kontos based on Kontos alone and a skilled artisan's knowledge.  Appellants' Br. 42–46.  But a fair reading of the petition belies this assertion.  The petition first explained why the express disclosures of Kontos teach claim 1 (which the Board found to be deficient).  J.A. 18059–62.  The petition then explained why, "[t]o the extent not taught by Kontos," a skilled artisan would have modified Kontos "as provided by Adams."  J.A. 18062.  The Board understood Medtronic's arguments for modifying Kontos as relating solely to the combination of Kontos and Adams, and Medtronic has not shown error in the Board assessing the argument Medtronic fairly made—whether the express

---

[9]    The Board erroneously referred to "advancing the substantially rigid portion of the coaxial guide catheter" instead of the flexible tip portion when discussing claim 1 and its proper order.  Medtronic argues that the Board's erroneous statement reflects a misunderstanding of claim 1's scope.  We disagree.  The Board's seemingly clerical error does not change the crux of its conclusion: that Medtronic cited no evidence establishing that Kontos discloses inserting the ICD after advancing the flexible tip portion.  The Board's error is therefore harmless.

18      MEDTRONIC, INC. v. TELEFLEX LIFE SCIENCES LIMITED

disclosures of Kontos teach claim 1. *See Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1377 (Fed. Cir. 2023) ("[T]he Board should also not have to decode a petition to locate additional arguments beyond the ones clearly made."). The Board thus did not ignore critical portions of Kontos's disclosure.

Medtronic also argues that the Board applied the wrong obviousness standard by focusing on Kontos's express disclosures rather than the broader teachings of Kontos and a skilled artisan's creativity and common sense. But the Board did not evaluate obviousness with an overly restricted view of the prior art. Instead, it evaluated the obviousness arguments Medtronic presented over Kontos alone, which were based on the express teachings of Kontos. The Board did not err. *Cf. Yita LLC v. MacNeil LLC*, 69 F.4th 1356, 1366–67 (Fed. Cir. 2023) (no error where the Board addresses only what a prior-art reference "teaches" and not "what a relevant artisan would have found obvious to modify" where the petition did not fairly present a modification argument).

We thus affirm the Board's conclusion that claim 1 was not shown to be unpatentable for obviousness over Kontos alone.

C

We finally turn to Medtronic's challenge to the Board's finding in the *'1342 Decision* that a skilled artisan would not have combined Kontos and Adams.

Adams describes an emboli protection system that occludes blood flow. J.A. 2457. It discloses a method of deploying a filter to catch dislodged emboli. J.A. 2478. This method teaches advancing guide catheter 10 to the ostium of an artery, then advancing sealing device 20 until the sealing device extends beyond the guide catheter, then advancing distal protection device 15 through the lumen of sealing device 20, then withdrawing sealing device 20, and

then inserting a treatment device like a stent or a balloon. J.A. 2483. Sealing device 20 occludes blood flow during the advancement of the distal protection device. J.A. 2483. As Adams observes, other approaches to protecting from embolisms, like a balloon approach to seal a vessel, "can be problematic because no blood is flowing through the vessel during use of the treatment device and ischemia can develop quickly, particularly in saphenous vein grafts. The procedure must be conducted swiftly to prevent undue patient pain." J.A. 2477.

Medtronic's petition proposed modifying Kontos "to, as provided by Adams, maintain the distal end of the extension catheter beyond the distal end of the guide catheter, and then advance the interventional device into the coronary artery alongside the substantially rigid portion." J.A. 18062. Medtronic based this proposed modification on Adams's teaching of "advancing guide catheter 10 to the ostium, whereupon the sealing device 20 (extension catheter) is advanced until the distal portion extends beyond the guide catheter. Thereafter, the distal protection device 15 (interventional device) is advanced through the lumen of the sealing device 20 and to a location distal to the treatment device." J.A. 18061 (cleaned up). Medtronic also asserted that combining Kontos and Adams "would have been nothing more than combining prior art elements according to known methods to yield predictable results" and presented several reasons why a skilled artisan would make the Kontos-Adams combination. J.A. 18062–63.

The Board found that a skilled artisan would not have combined Kontos and Adams. In doing so, the Board noted that, in Adams, sealing device 20 is withdrawn *before* inserting a treatment device like a stent or a balloon because occluding blood flow, which sealing device 20 does, is undesirable. *'1342 Decision*, 2022 WL 444084, at \*12. The Board cited Teleflex's expert testimony in support of this finding. J.A. 10461 ¶ 144 ("Adams emphasizes that occluding blood flow is undesirable, and therefore teaches that

the guide seal is deployed only during deployment of the filter and not during the subsequent delivery of [ICDs] such as balloons and stents." (citing J.A. 2477, 2483)). By making this finding, the Board concluded that Adams undermined what Medtronic proposed—keeping sealing device 20 in guide catheter 10 during the insertion of a treatment device like Kontos's balloon catheter.

Medtronic raises two primary arguments against this conclusion. First, Medtronic argues that the Board did not analyze the proposed combination Medtronic presented in its petition. We disagree. The Board analyzed the argument Medtronic presented in its petition and found that Adams did not teach advancing a treatment device, *like the balloon in Kontos*, through sealing device 20. While Adams does disclose advancing distal protection device 15 through sealing device 20, substantial evidence supports the Board's finding that Adams suggests drawbacks from advancing the types of treatment devices disclosed in Kontos through sealing device 20, which are different kinds of devices from distal protection device 15. J.A. 2477 (Adams explaining that occluding blood flow during treatment has patient drawbacks); J.A. 10461 ¶ 144 (Teleflex's expert explaining the same). Adams itself recognizes the difference between distal protection device 15 and other devices like stents and balloons. *E.g.*, J.A. 2478 (distinguishing the distal sealing device from a different "vascular treatment device," like Kontos's balloon catheter); J.A. 2483 (same). Second, Medtronic argues that the Board too narrowly assessed Adams's functionality, noting that a prior-art reference only needs to be suitable for a given function. This argument is inapposite. The Board examined Adams's entire disclosure and, in light of the drawbacks of Medtronic's proposed combination, found that a skilled artisan would not combine Kontos and Adams as Medtronic proposed. *'1342 Decision*, 2022 WL 444084, at *11–13. Medtronic has not shown error in this analysis.

We thus affirm the Board's finding that a skilled artisan would not have combined Kontos and Adams (and the overall conclusion of nonobviousness based on that finding).

### CONCLUSION

We have considered Medtronic's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's decisions.

### AFFIRMED